The ORDINARY OF BIBB COUNTY, plaintiff in error, *vs.* the CENTRAL RAILROAD AND BANKING COMPANY *et. al.,* defendants in error.

By the charters of certain railroad companies they are authorized " to purchase and hold all real estate that may be necessary and proper, for the purpose of laying, building and *sustaining*" said railroads; and when it is declared in said charters, "that the said railroads, and the *appurtenances of the same,* shall not be subjected to be taxed higher than one-half of one per cent. upon their annual nett income, and no municipal, or other corporation, shall have power to tax *the stock* of said companies, but may tax *any property,* real or personal, of said companies, within the jurisdiction of said corporation, in the ratio of taxation of like property ": *Held,* that *all the property* of said companies, that is *necessary* and *proper,* for the purpose of laying, building, and *sustaining* said railroads, constitutes a part of the capital *stock* of said companies, and is not liable to be taxed in any other manner than is specified in their respective charters; but that any *other property* owned by said companies, which is *not necessary*

and *proper* for the purpose of laying, building and *sustaining* said roads, and not *appertaining thereto*, may be taxed by the county, or other corporation, in the ratio of taxation of like property.

*Held, further*, that the property of the respective railroad companies specified in the record, is not liable to be taxed by the county of Bibb, *except* lot number two, in block seventy-eight; and that the Court below erred in holding, and deciding, that the said lot number two, in block seventy-eight, was *exempt* from taxation by the county.

Taxation of Railroad property. Decided by Judge COLE. Chambers.    Bibb County.    October, 1869.

The Ordinary of Bibb county endeavored to levy a tax upon the property of the railroad companies having their *termini* in Macon. His right to do so was denied by the companies. The Southwestern Railroad Company and the Central Railroad and Banking Company agreed to submit the facts to Judge Cole and let him decide between them, reserving the right to review his decision by writ of error to this Court. The following facts were agreed upon and delivered to the Judge: The property of the Southwestern Railroad Company in said county consists of its track, its office for the transaction of the company's business, and connected therewith is the freight depot and warehouse, a round-house, where engines are kept when not in use, and connected therewith is a workshop used by the company solely for the purpose of repairing and keeping in safe and complete running order the cars, engines and machinery used and employed upon its line of road. When there is not enough repairing on hand to keep the company's mechanics employed, new work, such as the wood-work of passenger and freight cars, for use on said railroad, is manufactured. This work-shop consists of a wood and carpenters' shop, where repairs are made on the wood-work of cars and engines, a blacksmith shop, where repairs are made on the iron-work of cars, engines and machinery used upon said railroad, a foundry-shed, where brasses or brass castings used in repairing cars and engines used upon said railroad are cast, and a paint-shop where cars and engines used on said railroad are painted after being repaired; all these are connected

with the main line of said railroad by tracks running into said work-shops. Besides these, it owns lots Nos. 2 and 8, in blocks 78 and 89, in Macon, which said company has purchased for the purpose of erecting thereon their work-shops, that being a more eligible site than the one now occupied by said shops, and said company intends to remove them to said lots.

As yet said Nos. 2 and 8 are not used for railroad purposes except that on No. 2 is a house used for keeping oil and a privy for the use of the employees of said railroad company.

The amendment of the charter of the Southwestern Railroad Company, authorising an increase of its capital stock beyond $3,500,000 00, assented to on the 10th of December, 1860, was never accepted by the company and the company never issued any stock under said Act.

The Central Railroad and Banking Company has recently bought certain lots in Macon at the foot of Mulberry street, between Fifth and Sixth streets for the purpose of changing the location of its track and erecting upon them a depot and transferring its depot from the east to the west side of Ocmulgee river. Said purchase was necessary to get the right of way, for change of location of roadbed and to obtain ground upon which to erect its depot and warehouses, and consists of Nos. 1, 7 and 8, in square 5; No. 2 and parts of Nos. 7 and 8 in square 16; Court-house square; Nos. 3, 4 and 7 in square 25; Nos. 1, 2, 6 and 8, and parts of Nos. 3 and 4 in square 36; part of No. 5 in square 45; Nos. 1, 2, 6 in square 56; all marked upon a map of the city exhibited, and through which it is proposed to run said Central Railroad.

The general passenger depot in Macon is used by all the railroads centering in Macon, and exclusively for railroad purposes, *i. e.*, for the arrival and departure of trains, waiting rooms for passengers, offices for the sale of tickets and rooms for the safe-keeping of unclaimed baggage. There is in this building a second story, in which is a large room built for an eating room for passengers; but it is not nor has been for eight years used for that purpose nor otherwise than as sleeping rooms for some of the employees of said railroads.

The Southwestern Railroad Company and the Central Railroad and Banking Company have paid to the State a tax of one-half of one per cent. upon their nett annual incomes for the years for which said Ordinary now claims the right to tax said property for county purposes.

Judge Cole was to decide whether said property or any of it could, under the charters and the laws of the State, be taxed for county purposes, and whether said railroad companies, or either of them, were liable for any other tax than the one-half of one per cent. upon their annual incomes paid as aforesaid, and if any of the property was so taxable, to specify which it was.

The Macon and Brunswick Railroad Company, the Macon and Western Railroad Company and the Macon and Augusta Railroad Company, concentering in Macon with said other railroads, being interested in the question and the Ordinary consenting, were made by consent parties to said submission, but did not specify what property they owned in said county.

Judge Cole decided the tracks of the roads, their water-stations and wood-stations, bridges, cars and engines, their warehouses, yards and places for loading and unloading their cars, the general passenger depot, wood-shops and round-houses and all their buildings and shops now used by them, were exempt from said county tax because they were necessary and proper for sustaining said railroads. He further held that such of their real estate as was not improved and in use was subject to be taxed under the general tax laws until it was improved and used for railroad purposes; but that said number two in block seventy-eight was used for purposes necessary for sustaining said Southwestern Railroad and was not liable to such county tax.

The Ordinary assigns as error so much of said decision as exempts from county taxes the Machine Shops and Round Houses, and said No. 2, in block 78, and holds that the real estate of said railroad companies in said county may be taxed for county purposes only so long as it is unimproved and not used for railroad purposes. In the same bill of exceptions, said railroad companies assign as error so much of said de-

cision as holds that the lots bought exclusively for the purpose of using them for depots, water stations, and other like uses and necessary railroad purposes, are subject to said taxation until they be improved and used for railroad purposes.

S. HUNTER, O. A. LOCHRANE, for the Ordinary.

WHITTLE & GUSTIN, LYON, DEGRAFFENREID & IRVIN, LAWTON, for the Railroad Companies.

WARNER, J.

The Court in this case is unanimous in its judgment in reversing the judgment of the Court below, but for different reasons. I shall state the grounds upon which my own judgment is based. The charters of the respective railroad companies authorise them "to purchase and hold all real estate that may be necessary and proper for the purpose of laying, building and *sustaining* said railroads, and that the said railroads and the appurtenances of the same, shall not be subject to be taxed higher than one-half of one per cent. upon their annual nett income, and no municipal or other corporation shall have power to tax the *stock* of said companies, but may tax any property real and personal of said companies within the jurisdiction of said corporation, in the ratio of taxation of like property." What is the "stock" of said railroad companies? Bouvier defines stock to be, "the capital of corporations; this is usually divided into shares of a definite value, as one hundred dollars, fifty dollars, per share." 2d Bouvier's Law Dictionary, 531. The stock of these companies then consists of their capital invested in such property as may be necessary and proper for conducting the business for which they were chartered. *All the property* of these companies that is *necessary* and *proper*, for the purpose of laying, building and *sustaining* their respective railroads, constitutes a *part of the capital stock* of said companies, and is not liable to be taxed in any other manner than is specified in their respective charters. Any *other* property owned by said companies, which is *not necessary* and

*proper* for the laying, building and *sustaining* said railroads, and not necessarily appertaining thereto for *that purpose* may be taxed by the county, or other corporation, in the same ratio of taxation of like property. The companies cannot be taxed twice on their capital stock employed in conducting the legitimate and necessary business thereof under their respective charters, once by the State, and then by the counties, or other corporations ; for it is expressly stipulated in their contract with the State, that, they shall not be taxed higher than one-half of one per cent. on their annual nett income, and that no municipal, or other corporation, shall have power to tax *the stock* of said companies. If they pay to the State the stipulated tax on their nett annual income arising from *the use of their capital stock,* and then be required to pay a county or corporation tax upon *the property* necessarily used and employed as a part of their capital stock, which produces their nett annual income, then, *practically*, they are taxed *twice*, which, in my judgment, would be a violation of their respective charters.

The judgment of this Court, upon the statement of facts contained in the record, is that the property of the respective companies specified therein, is not liable to be taxed by the county of Bibb, except lot number two, in block seventy-eight, and that the Court below erred in holding and deciding that lot number two, in block seventy-eight, was exempt from taxation by the county.

Let the judgment of the Court below be reversed.

McCAY, J., concurred as follows :

1. By the laws of Georgia, as they now exist, no county tax can be collected upon any property not taxed by the State.

2. When the State, in the grant of a charter to a railroad company, provided that the said railroad and its appurtenances should not be taxed higher than one-half of one per cent. upon its nett income, the "railroad and appurtenances" mentioned, fairly included not only the road and roadbed, but stations, tanks, wood-sheds, depots, engine houses, shops for

the construction and repair of its machinery, offices and other buildings and property necessary for the convenient and successful construction and running of the road.

3. In the charter of the Central Railroad, the State has expressly reserved the right to authorize municipal and other corporations (which includes counties) to tax for local purposes the property of said company, of any character, within the locality, at the same rates as taxes are assessed upon the property of natural persons; but though such a right is reserved to the State, it has not by any law been as yet conferred on the counties.

3. Real estate purchased by a railroad company, to be used as a locality on which to erect depots, and over which to lay a track, in pursuance of a contemplated change of depot site, does not become "property appurtenant," until the change is actually made and the former site abandoned.

4. When there is property of a railroad company in a county, subject to State and county tax, which is not returned to the proper tax receiver, it is the right and duty of the Ordinary to cause the collector to have the tax, both State and county assessed and collected.

BROWN, C. J., concurred as follows:

The charter of the Central Railroad and Banking Company contains this provision:

"That the said railroad and the appurtenances of the same, shall not be subject to be taxed higher than one-half of one per centum upon its annual nett income, and no municipal or other corporation shall have power to tax the stock of said company, but may tax any property, real or personal, of said company, within the jurisdiction of said corporation, in the ratio of taxation of like property."

It is insisted that this is a contract between the State and the company, which forever exempts the company from a higher tax than one-half of one per centum on its nett income, and that they are entitled to this perpetual exemption from taxation, no matter what may be the exigencies of the

State or the burdens of taxation upon her people. If this be so, it is certainly but just to hold the company to such part of the contract as is favorable to the public.

· While the State has relinquished her right of taxation over the road and its appurtenances, the company has expressly agreed, on its part, that a municipal or other corporation may tax any property, real or personal, of said company, within its jurisdiction, in the ratio of taxation of like property.

Now, it is argued that this provision only subjects to municipal taxation such property as the company may have purchased in payment of debts, and the like, which are not appurtenant to the road, and that this view is strengthened by the inhibition to tax the stock of the company, which it is insisted includes the road and its appurtenances.

But if this view be correct, what use was there for the provision that a municipal or other corporation may tax any property, real or personal, of said company ? The State has not relinquished her power to tax any property the company may own, except the road and its appurtenances. Property purchased by the company in payment of a debt, not connected with the road, and not appurtenant to the road, being taxable by the State as other property, there could have been no doubt about the power of the State to authorize municipal corporations, also, to tax it, and in that view of the case the provision in the charter, now under consideration, would have been surplusage and altogether useless.

It is very evident that this language was intended, when inserted in the contract, to mean something. And I think it quite as evident that it does mean, that while the State may not tax the road and its appurtenances more than one-half of one per centum on its nett incomes, the municipal corporations and county corporations, through which it runs, may tax *any* of its property, real or personal, in the ratio of taxation imposed on any other like property, that is, on any other real or personal property within the city or county, and subject to taxation by it.

Treating the charter as a contract, and admitting, for the

purposes of this case, that the State may, by such contract, relinquish her power of taxation, it follows under a fair and just construction of the contract, that the State may tax all property of the company, except the road and its appurtenances, and may authorise the counties, or other municipal corporations, through which the road runs, to tax any and all property of the road, including the roadbed, which is real property, as well as any personal property it may have, in any such county, in the same ratio with other real or personal property in the county, that is, if other real or personal property is taxed a certain per cent. *ad valorem,* the property of this company is subject to a like per cent. *ad valorem,* or if the tax on other property be specific, the like specific tax may be imposed on the property of the company.

But while I have no doubt of the power of the Legislature to authorise the counties, and other municipal corporations through which the road runs, to impose such a tax, the question arises in this case, whether that power has been exercised as to any part of the property of the company not subject to a State tax. And I am satisfied, after looking into the case carefully, that the Legislature has not conferred any such authority on the county of Bibb, or any other county. The county is only authorised to levy a per cent. on the State tax. Now, as the State is not authorised to levy a tax on the road or its appurtenances in Bibb county, and none such has been levied, there is no State tax upon which the county can assess a per cent. If the Legislature should, at any time, confer the authority upon the county to assess a tax upon the property of the company within its limits, it will be necessary to provide some mode of assessing and collecting it other than the present mode of levying a per cent. upon the State tax.

But I am satisfied that all property purchased in the county of Bibb, for the purpose of locating new depots, or for any other purpose, is subject to both State and county tax, till actually occupied by the road for such purpose. So soon as the new depot buildings are complete, and are occupied by the road as such, they will then be part of the appur-

tenances of the road, no longer subject to a State tax, and can only be taxed by the county in such manner as may'be prescribed by the Legislature. And upon the removal to, and occupancy of, the new buildings by the road, the grounds occupied by the old depots and workshops, will become subject to State and county tax.

While we should not give too narrow a construction to the word "appurtenances," it should receive a reasonable construction. The term embraces all the necessary depots, shops, and other buildings of the company, which are proper for the successful management of the road, together with such quantity of land as may be covered by or actually necessary for such use, but no more.

The remarks made in reference to the Central Railroad do not apply to such other roads as have a clause in the charter exempting them from taxation beyond one half of one per cent. upon their nett incomes, without any such provision as is contained in the charter of the Central Railroad, reserving the right of taxation to municipal or other corporations—as the Georgia and Southwestern Roads, for instance —whose charters contain no such provision in favor of county or city taxation.