COUNTY OF RAMSEY *vs.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

July 10, 1885.

**Taxation of Railway Property.**—Gen. St. 1878, *c.* 11, §§ 128, 129, controls in respect to the taxability of the property of a railway corporation which has accepted the provisions of that act.

**Same — What Lands are Exempt from Ordinary Taxation.**—The exemption from ordinary taxation declared by that act extends (as respects lands) only to such lands as are held and used for the proper purposes of the corporation, or to such as, although not in actual present use, are being prepared and appropriated to the purposes of the corporation by such means as may be necessary.

**Same — Lands not Used for Corporate Purposes.**—Lands which have ceased to be used for corporate purposes are taxable, whether the corporation rents the lands for use to individuals, or suffers them to be wholly vacant. So, lands which have never been used, but are held for use at some future time, are taxable, although it is probable that they will be needed for such contemplated use.

**Same—Lands Omitted for Several Years.**—Lands not taxed in any year or years, because it was supposed that they were not taxable, may subsequently be taxed for those years, by force of Laws 1881, c. 5.

**Practice—Certification of Questions in Tax Proceedings.**—Upon a certification to this court by the district court of questions arising under the tax laws, the statement made by that court, as required by the statute, of the facts established, and of its decision thereon, has the effect of the findings and decision of a trial court in ordinary cases.

In proceedings in the district court for Ramsey county, to enforce payment of taxes delinquent on June 1, 1883, application was made for judgment for the tax of 1882 and prior years against certain pieces of land, the title to which was in the defendant railway company. Upon the application, before *Brill*, J., the railway company appeared and objected, claiming the lands to be exempt under Gen. St. 1878, c. 11, §§ 128, 129. Testimony was taken, findings of fact were made by the court, and judgment was directed to be entered against a portion of the lands described in the application for the tax of 1882 and prior years. Thereupon the case was certified to this court under Gen. St. 1878, c. 11, § 80.

*J. J. Egan* and *M. D. Munn*, for the County.

*Bigelow, Flandrau & Squires*, for defendant.

DICKINSON, J.[1] This proceeding involves the taxability, during certain years, from 1879 to 1882, inclusive, of lands in the city of St. Paul, claimed to be owned by the Chicago, Milwaukee & St. Paul Railway Company. The railway company claims that the lands are within the exemption from ordinary taxation, which attaches to its property in general, through provisions of law, pursuant to which it pays to the state 3 per cent of its gross earnings in lieu of such taxation. On the part of the county it is claimed that the man--

[1] Berry J., was absent and took no part in this case.

ner in which these lands have been held and used has been such as to take them out from the class of exempt property.

The question of the taxability having been determined by the district court adversely to the company, it has been certified to this court pursuant to the statute. Gen. St. 1878, *c.* 11, § 80. In our consideration of the case we give the same effect to the findings of fact which have been properly made by the district court, and to its decision, as is ordinarily given to the determinations of a trial court. The statute above cited evidently contemplates this. The district court before which the proceeding is had is required, when it is considered that a case should be presented for review, to "make a brief statement of the facts established, * * * and of its decision," which is to be transmitted to this court.

From the statement thus before us the following facts appear: This land was not taxed prior to 1882, because it was supposed to be exempt. But in that year, pursuant to the requirement of statute, (Laws 1881, *c.* 5,) the county auditor entered the lands for taxation, and charged upon them taxes for certain previous years, as hereafter more particularly shown. This railway company is the successor of the Minnesota Central Railway Company, and also of the St. Paul & Chicago Railway Company, and its claim to the lands is in part through conveyances to it from those corporations. The lands were acquired by this company, or by the corporations to whose rights it has succeeded, as early as the year 1874. A description of the lands in question, sufficiently accurate for present designation, and the several years for which the taxes objected to were imposed upon the same, are as follows:

Lot 9, [south 50 feet,] block 30, St. Paul, taxed for year 1882.

Lot 10, [south 50 feet,] block 30, St. Paul, taxed for years 1881 and 1882.

Lot 13, block 30, St. Paul, taxed for years 1879, 1880, 1881, 1882.

Block 49, Rice & Irvine's addition, St. Paul, taxed for years 1878, 1879, 1880, 1881, 1882.

Block 69, Irvine's enlargement, etc., St. Paul, taxed for years 1878, 1879, 1880, 1881, 1882.

Block 70, Irvine's enlargement, etc., St. Paul, taxed for years 1878, 1879, 1880, 1881, 1882.

The south 50 feet of lot 9 was used by the railway company for railroad purposes, in connection with its passenger depot, until July 1, 1881, since which time it has been substantially unoccupied for any purpose. The south 50 feet of lot 10 was so used until the latter part of 1880, since which time it has not been used for railroad purposes, but has been used by private persons for their own benefit, with the consent of the company. Lot 13 was occupied by the railway company for warehouse purposes in connection with the operation of its lines of road until 1879. During the years from 1879 to 1882, both inclusive, it was not used by the company for any purpose, but was occupied by private persons for their own benefit, and is still so used. Blocks 49, 69, and 70 are adjacent to the railway operated by this company. They were acquired and have been held for the purpose of extending railroad tracks upon the same, and for devotion to railroad uses, in connection with the operation of the road, from time to time, as necessity or convenience might demand. These blocks have never been used or occupied for any purpose; but it is probable that it will become necessary for the company to use them for railroad purposes at some time in the future.

This railway company accepted the provisions of Sp. Laws 1873, c. 111, (Gen. St. 1878, c. 11, §§ 128, 129,) whereby it was provided that any railroad company accepting and becoming subject to the provisions of that act, should annually pay into the treasury of the state a defined percentage of its gross earnings. By this act it is declared that, in consideration of the annual payment thereby provided for, "the railroad, its appurtenances and appendages, and all other property, estate, and effects of said corporation, held or used for, in, or about the construction, equipment, renewal, repair, maintaining, or operating its railroad, including the lands granted to said company to aid in the construction of said railroad, as also the stock and capital of said company, shall be, and hereby are, forever exempt from all taxation and from all assessments." The corporation having accepted and become subject to the provisions of this act, its rights, as well as those of the state, are to be determined by it; and it will be

unnecessary in this case to consider the language of a somewhat similar provision with respect to the Minnesota Central Railway Company contained in Sp. Laws 1865, *c. 5.* In compliance with this law the corporation has, during each year for which the taxes in controversy are charged, paid to the state the required percentage of the gross earnings of its several lines of railroad in this state. Upon the facts above indicated, the district court sustained the taxes as charged upon the land.

There can be no doubt that the statutory exemption from general taxation to which we have referred, should not be construed as extending to all property of the corporation, without regard to the purposes for which it is held or the uses to which it is for the time devoted. The most obvious construction of the act declaring the exemption, and a construction supported with substantial unanimity by the decisions bearing upon the subject, is that the exemption extends only to such property as is held or used for the purposes for which the corporation exists. *State* v. *Commissioners of Mansfield,* 23 N. J. Law, 510; *State* v. *Newark,* 26 N. J. Law, 519; Cooley on Taxation, 151. As to this there is, perhaps, no controversy in this case. The real controversy is whether the fact that, as to a part of the property, it has never yet been used for railroad purposes, and, as to the remainder, that it has ceased for the time to be so used, subjects it to taxation, in view of the fact that it was acquired for railroad purposes, and is still held for such use in the future. This latter fact is not expressly found by the court as to the lots in block 30; but from the view we take of the law of the case, it may be assumed to be so, as the corporation claims is the fact, and as the evidence tends to show the fact to be.

The decided cases yield but little aid towards the decision of this question. From the decisions of the courts of New Jersey, where, under exemption laws somewhat similar to that above cited, this question has most frequently arisen, the following propositions may be taken as a brief expression of the law as there declared: Lands held by the corporation for future, but already contemplated use, but which are in the mean time let to individuals for use, are taxable. Lands held for future use, such use not being, however, at present actually

contemplated, are taxable, although vacant and unoccupied. Lands acquired and held for future use, and which are in the course of being devoted to such use, as by the necessary filling of submerged land, are not taxable; and (perhaps) lands not in use but in good faith held for future use, the need for which is apparent and not remote, are exempt. *State* v. *Newark*, 25 N. J. Law, 315, affirmed in court of errors, 26 N. J. Law 519; *State* v. *Collector of Middle Tp.*, 38 N. J. Law, 270; *Cook* v. *State*, 33 N. J. Law, 474; *State* v. *Haight*, 35 N. J. Law, 40; *State* v. *Jersey City*, 41 N. J. Law, 471; *State* v. *Binninger*, 42 N. J. Law, 528.

In *Ordinary of Bibb Co.* v. *Central Railroad*, 40 Ga. 646, land purchased as a site for a workshop, and to which a workshop located elsewhere was intended to be removed, the removal, however, not having yet been made, was held taxable. So, in the case first cited above from New Jersey, the fact of present use by the corporation was made the test of taxability.

It is a general policy of state that all property within the state, excepting certain defined classes, of which public burying-grounds, school-houses, hospitals, and churches are examples, shall bear its proper proportions of the common burden of taxation. Many reasons doubtless conduced to the adoption of the provision to which we have referred, relating to the taxation of railroads. It is not, however, to be supposed that this plan was adopted for the purpose of relieving corporations, or their property, after their roads had been long completed and put in operation, from their due share of this common burden. It was not in reality a plan for *exempting* property from taxation, but a substituted *method* of taxation. It must be supposed that it was contemplated that this system would, upon the whole, fairly effect the objects of taxation with respect to such corporations, and be equivalent in its results to taxation of the property owned by them. This theory, however, necessarily rests upon the assumption that the property of the corporation will be held and used by it for those purposes for which the corporation exists, and that by such use an income will be derived, the percentage of which is received by the state in place of a tax upon the property. In so far as the property of a corporation is not so employed, this end is not accomplished.

Property not used yields no income to the corporation, and hence no revenue to the state. Suppose, for instance, that a railroad corporation acquires the land for its right of way across the entire state, with grounds for its proposed depots and other necessary structures, for terminal facilities, and for all the proper purposes of a railroad, and, after constructing 20 miles of road, it suspends further progressive operations, and merely operates that part of the road so constructed, intending, however, at some indefinite future time, to complete and put into use its contemplated line. According to the theory urged in behalf of the railway company in this case, such lands, although not used for a period of years, if held in good faith for future use, would be exempt from taxation, and the state would derive no other revenue from it than such as arose from the operation of the 20 miles of road. But it would seem plain that such a construction of the law would frustrate the purposes of the system of substituted taxation.

Cases similar in principle, and more likely to occur, may be suggested. For instance, a railroad corporation whose road has been completed and is in operation, contemplating the future, but not present, need of additional land for proper railroad purposes, such as terminal trackage and other facilities, or the converting of its single-track railroad into one with four tracks, acquires, by purchase or otherwise, extensive tracts of valuable land, and holds it until the time shall come when its use shall become necessary. In the mean time, if all this additional property is not taxable, the situation is that, while the corporation holds real estate sufficient for the purposes of a four-track railroad, and of the business which such a road may in the future transact, it pays to the state the percentage upon an income from a one-track road, which is not augmented by the acquisition or holding of the newly-acquired property. Of course, when the case relates to only a few lots or blocks of land, the law may be erroneously construed without it becoming so *apparent* that its real purpose has been misconceived as would be the case under circumstances such as we have supposed; but the law and its construction must be the same in one case as in the other.

In view of what we think is the purpose of the law, that all prop-

erty shall contribute to the common burden of taxation; in view of what seems to us to be the obvious relation between the income which is charged with a percentage, in lieu of taxation, and the exemption which is declared,—it is considered that the apparent purposes of the law are accomplished by an exemption of such property as may be fairly said to be held and used presently for railroad purposes, and that property not so used, although held in good faith, with the purpose at some future time of devoting it to such use, should be deemed to be not within the exemption. In brief, the property of the corporation which is used for its purposes is exempt from ordinary taxation, *because,* indirectly, through the method prescribed in the law, such property does yield to the state its proper tribute; and, when not so used, it is not exempt. It seems impossible to take logically any middle ground between holding that, in order that lands shall be exempt from ordinary taxation, they must be so held that they may fairly be said to be in use by the corporation for the purposes for which it exists, or actually devoted to that use, and holding that all the property of the corporation is exempt, however remote or contingent may be the prospect or intention of making such use of it. And yet it cannot be doubtful that this latter position is untenable. We think it is not supported by any authority.

Assuming the truth of what has been said, to the effect that the property of the railroad is not really *exempt* from taxation, but that the law merely provides a peculiar mode of taxation, it is apparent that those decisions relating to classes of property which are unquestionably intended to be withdrawn from taxation, such as public burying-grounds, have but little application to this case.

As to property not used for corporate purposes, we are unable to recognize the fact, (upon which some of the cases turn which we have cited,) as to whether the property is allowed to be wholly unoccupied, or is leased for private use, as being a test of the taxability of the land. The fact that land is let for use to private individuals may be a circumstance going to show, and making it indeed very apparent, that the land is not used for corporate purposes, and that for the time it is not in any sense needed or devoted to the proper purposes of the corporation; but land which is wholly unoccupied is as

completely disconnected from all corporate use as is that which is let for the use of others. There is nothing in the fact that the corporation consents to the use of the land for any private purpose, or receives rent for such use, which should make the land taxable, if it would not be taxable if vacant. If taxable, it is only because it is not appropriated to the corporate use contemplated by the law, and not because, in some manner not contemplated by the law, the corporation has derived some income from it.

It is suggested, and is in proof in this case, that the rents which this railway company received for such of this property as was rented were included in the annual statements of its gross earnings, upon which the proper percentage was paid to the state. This does not affect the case, if we are right in construing the law as not including within the exemption property not used for the purposes for which the corporation was created, and the fact referred to affords no argument against this construction of the law. If a railroad company should, without interference on the part of the state, divert a portion of its property, real and personal, to the business of manufacturing flour, it could not claim the exemption of such property from taxation, upon the ground that it had paid to the state 3 per cent. upon the income derived from that business.

From the language we have used we would not be understood as holding that a railroad corporation may not, under any circumstances, hold real estate exempt from ordinary taxation, although it is not for the time in actual use for railroad purposes, as the word *use* is ordinarily understood. On the contrary, we think that such may be the case. Suppose, for instance, that a corporation, created for the construction of a line of road, acquires, by condemnation or purchase, the necessary lands for its right of way and for other proper purposes, and proceeds at once to appropriate the lands to the necessary purposes by the construction of its road-bed, track, buildings, etc., and continues the process of appropriation without unnecessary delay. There would seem to be no doubt that, although it might necessarily require a period of one, two, or three years to complete the road and put it in operation, yet these lands should in the mean time be deemed exempt. From an obvious necessity the law must be considered as

·contemplating that some period of time, the duration of which must depend upon the circumstances, must elapse between the acquisition of the lands and their actual use; and while the necessary process of conversion from mere land into an operated railroad is being thus carried forward, the land is presently devoted to railroad purposes within the contemplation of the law. Such is not the case in respect to lands which are not being appropriated to use by the corporation, and are merely held for possible, or even probable, future use. This distinction is recognized in *State* v. *Haight*, *supra*, and is there suggested as a proper ground of the decisions in *State* v. *Newark*, *supra*. See, also, *New England Hospital* v. *Boston*, 113 Mass. 518; *Trinity Church* v. *Boston*, 118 Mass. 164.

The lands above described were not actually used by the corporation for purposes connected with its business during the years for which taxes were imposed, nor were they used by it in the broader sense, which we have above considered, by the prosecution of the work of applying them to the proper purposes of the corporation. They were simply held for future use. We think they were not within the exemption.

It is claimed that the provisions of the general tax law (Gen. St. 1878, *c.* 11, § 27) indicate a purpose that such lands shall not be taxed unless they shall have been leased by the corporation for a term of three years or more. That section is plainly applicable to lands granted to railroad corporations, to aid in the construction of their lines of road, and although it be conceded to be also applicable to lands such as those in question, it is only a declaration that the very fact of the leasing or contracting therein specified shall make the land taxable as the property of the lessee or purchaser. It does not import that *only* lands so leased or contracted to be sold shall be taxable. It does not affect the principles upon which we think the case is to be decided.

It was the duty of the county auditor to enter the lands for taxation for the years for which they were taxable. Laws 1881, *c.* 5.

Our conclusion is that the determination of the district court was right, and it is affirmed.