COUNTY OF ST. LOUIS *vs.* ST. PAUL & DULUTH RAILROAD COMPANY.

March 12, 1891.

Taxes — Exemption of Railway Property — Wharf Leased to Coal Company.—A tract of land owned by a railway corporation, upon which it had constructed a dock or wharf, renting the same to another corporation, engaged in the business of selling and shipping coal, and for the purposes of such business, is not exempt from ordinary taxation as property held and used for railway purposes, although by the terms of the lease the tenant was under obligation to perform certain service in its line of business for the railway corporation, and also obliged to furnish a certain amount of freight annually for transportation over its lines of railway.

Proceeding in the district court for St. Louis county, to enforce payment of delinquent real-estate taxes against the property de-

scribed in the opinion. The railroad company answered, and, on a stipulation of facts, the cause was heard by *Stearns, J.,* who ordered judgment against the property, and thereupon certified the case to this court.

*Henry F. Greene,* for plaintiff.

*Cash & Williams,* for defendant.

COLLINS, J.[1] This case was certified up by the district court as authorized by Gen. St. 1878, c. 11, § 80. It must be determined by an application to the admitted facts of the principles enunciated in *County of Ramsey* v. *Chicago, Mil. & St. Paul Ry. Co.,* 33 Minn. 537, (24 N. W. Rep. 313;) *County of Todd* v. *St. Paul, M. & M. Ry. Co.,* 38 Minn. 163, (36 N. W. Rep. 109;) *City of St. Paul* v. *St. Paul, M. & M. Ry. Co.,* 39 Minn. 112, (38 N. W. Rep. 925;) *County of Hennepin* v. *St. Paul, M. & M. Ry. Co.,* 42 Minn. 238, (44 N. W. Rep. 63.) These facts, concisely stated, are that respondent railway company is the owner of a tract of real property, very valuable for dock purposes, in the city of Duluth, one-fourth of which is unoccupied, and, concededly, subject to taxation in these proceedings. The remainder has been covered with a coal wharf or dock built by respondent, but used and occupied by another corporation under a written contract, of which more will be said later on. Respondent has run its tracks upon this dock, and contends that the occupied three-fourths of the property in question is held and presently used by it for railway purposes, and hence that it is clearly within the terms of that section of its charter which provides for a substituted method of taxation—a percentage upon its gross earnings—in lieu of all other taxation. It does not own or operate any other coal dock or wharf in the city, according to the stipulated facts. It was also stipulated between the parties that competent witnesses would testify that, in order to successfully operate its railway, it was necessary for the company to own or operate such a dock for the transfer of coal from vessels to its cars. We are not quite sure from the findings that the court below intended to find this necessity as a fact, but, as we look at the real situation, this is of no importance.

---

[1] Vanderburgh, J., because of sickness, took no part in this case.

The contract referred to was made between respondent and the Northwestern Fuel Company, a dealer in coal, on the 17th day of April, 1886. It granted to the latter the right to possess, use, and occupy the whole of said wharf or dock for the term of 10 years, for the unloading of coal from vessels and the storage of the same thereon, for which right the fuel company was to pay an annual rental in equal monthly instalments. There was a condition in respect to unloading from the vessels and placing in its cars such coal as other parties than the fuel company might want to ship over respondent's lines of road; the compensation for the services rendered by the fuel company in transferring the coal being fixed at a certain sum per ton. The respondent also stipulated in said contract to switch to and from its connections in the city with other lines of railway such cars as the fuel company might wish to load with coal for shipment to points not reached by its lines of road, at rates to be fixed from time to time, but in no event to exceed certain stated maximum rates per ton. It was also agreed that in each year during the life of the contract the fuel company should ship not less than 50,000 tons of coal over respondent's lines of railway to three specified places thereon. Should the amount so shipped fall short of the stated number of tons in any one year, compensation was to be made by the fuel company. There were other conditions imposed upon each of the parties in the contract, but they are of no importance in this controversy.

It will have been seen by the above statement that, in effect, the contract was a lease of the premises to the fuel company, to enable it to carry on the business of dealing in coal, for the period of 10 years, and this is made more apparent when the facts, as they were stipulated to be, are considered. The fuel company was a regular dealer in an article of merchandise in demand all over the western country, and it sought a market everywhere. To the local trade alone it disposed of more than 6,000 tons per annum, no part of which was transported by its landlord. It shipped, at will, to points upon respondent's lines of road, or to places on the lines of other railways, according to destination. If the fuel company found its markets upon lines of road other than those operated by the railway

company, the latter had obligated itself to switch in the empties from its connections with the desired lines, and to switch out the loaded cars, as demanded by the tenant. So long as the fuel company shipped that part of its commodity sold at places on respondent's railway by way of its lines, and also shipped no less than 50,000 tons per year to the three specified places on its road, its right to sell and ship was without limit as to amount, or restriction as to territory. It had the exclusive use, control, and possession of the premises, except that, under a certain contingency, it would be compelled to render services to respondent in the way of transferring the coal of other shippers from their vessels to its cars, for which services it was to receive a presumably adequate compensation. The condition of the fuel company was not unlike that of the ordinary tenant, nor was it different from that of any other kind of a merchant who might lease a portion of respondent's premises on which to do business, at a stipulated rental, and under an agreement to make shipments over its lines to certain places, and to a defined extent or manner. But it is argued in respondent's behalf that because a dock or wharf such as was leased and operated by the fuel company was a convenient and necessary appendage or adjunct to any railroad with a terminal in the city in question, and was used by the tenant mostly for purposes connected with the road, and, further, by reason of the character of the commodity handled by the tenant, and those provisions of the contract which obligated the latter to make certain shipments over its lines, the premises were not liable to direct taxation. All of these reasons would be of more or less force had any kind of a merchant leased respondent's property, and without regard to the amount of freight he was required to ship over the road each year. In fact, this same line of argument was used and attempted to be applied in *County of Hennepin* v. *St. Paul, M. & M. Ry. Co., supra,* in which case a railway corporation owning a hotel on its line of road, patronized almost exclusively by those who went there in its cars, endeavored to bring it within the exemption because it stimulated travel, thus increasing the corporative earnings upon which a percentage was paid to the state in place of other taxation. No one contends that the bare fact of leasing this property conclusively shows it to be

v.45M.—33

subject to taxation, but that it was leased would be a circumstance going to show, and indeed making it very apparent, that it was not used for corporative purposes, as was said in the *Ramsey County Case.* Nor would the mere fact that it was acquired and used for purposes connected with the road necessarily determine its exemption. *County of Todd* v. *St. Paul, M. & M. Ry. Co., supra.*

Very little more need be said. Admitting that for the proper prosecution of its legitimate business it was necessary that the respondent should have docks and wharves in Duluth, it has, instead of using its property for its own necessary purposes, leased it to another corporation, engaged in merchandising, and, by the terms of its lease, abandoned all control over the property itself for a fixed period of time. To be sure, the tenant agreed to transact certain business for respondent, in line with its own, should it be called upon to do so, and it also contracted to do a certain share of its freighting over respondent's railway; but in the general business which was to be transacted upon the leased premises the railway company had no voice as to amount or the manner in which it was to be done,—no more interest or concern than it had in the business of many other merchants in the city. The property was not presently held or used by the corporation, or by a tenant for it, for corporative business; on the other hand, it was held by the tenant solely for its business purposes. The respondent's relation or connection with this business was merely incidental.

The decision of the district court that the entire tract was subject to taxation is affirmed.