SIMPSON v. UNION STOCK YARDS CO. OF OMAHA, Limited, et al.

(Circuit Court, D. Nebraska. September 23, 1901.)

No. 264.

1. JURISDICTION OF FEDERAL COURTS—STOCKHOLDER'S SUIT—COLLUSION.

A nonresident stockholder in a domestic corporation, who brings himself within equity rule 94 by showing demand on the corporation to refuse compliance with a state statute, and to contest its validity, and a formal refusal of the corporation by resolution of its board of directors, cannot be charged with being in collusion with the corporation to give a federal court jurisdiction of a suit brought to enjoin the enforcement of the statute, and compliance therewith by the corporation, where, among the principal grounds alleged against the validity of the statute, is that it is in violation of the constitution of the United States; such allegations raising a federal question, which gives the court jurisdiction of the suit, and to determine all the issues made therein, regardless of the citizenship of the parties, and whether brought by the stockholders or the corporation itself.

2. STATUTES—VALIDITY OF ENACTMENT—TITLE AS PART OF ACT.

Under the constitution of Nebraska, as construed by the supreme court of the state, the title to an act of the legislature is an essential part of it, and, to constitute a valid enactment, a bill must have passed each house, and have been signed by the governor, under the same title.

3. SAME—DETERMINING VALIDITY OF ENACTMENT—EVIDENCE.

A printed official statute must give way to, and be controlled by, the official enrollment, and both the official printed statute and the enrolled bill as filed with the secretary of state are controlled in case of dispute by the journals of the legislature.

4. SAME—APPROVAL UNDER DIFFERENT TITLE—NEBRASKA STOCK YARDS ACT.

The Nebraska act of 1897 (Laws 1897, c. 8), commonly known as the "Stock Yards Act" was passed by each house of the legislature under the title "A bill for an act to regulate stock yards and to fix the commission for the sale of live stock therein, and providing punishment for the violation thereof." When signed by the governor, as shown by the official enrollment, the bill bore the title "A bill for an act to regulate certain stock yards by declaring them public markets, and defining the duties of the person or persons operating the same, and regulating all

charges thereof, and providing penalties for the violation thereof." *Held*, that such act was not legally passed in conformity to the state constitution, and is void.

5. INJUNCTION—SUIT TO RESTRAIN ENFORCEMENT OF STATUTE—DEFENSES.
   In a suit against the attorney general of a state to enjoin him from enforcing a legislative act as required by its provisions, on the ground of its invalidity, a denial by defendant of an intention to enforce such act, coupled with an assertion of its validity, states no defense and raises no issue. The court must presume that, if defendant regards the act as valid, he will perform his official duty, and enforce it.

In Equity. Suit to enjoin enforcement of a statute of Nebraska relating to stock yards.

J. M. Woolworth and W. D. McHugh, for complainant.

F. N. Prout, Atty. Gen., and Norris Brown, Asst. Atty. Gen., for respondent attorney general.

McPHERSON, District Judge. The complainant, a citizen of Massachusetts, is a stockholder of the defendant company, the Union Stock Yards Company, praying that both defendants, citizens of Nebraska, be enjoined from putting in force a statute of Nebraska of 1897, known as "Senate File No. 33." The complainant brings himself within the terms of equity rule 94, by showing that long prior to the date of the act of the Nebraska legislature he became the owner by purchase of his corporate stock of defendant company, and at all times since has owned it, in an amount something like $80,000 par value, and of a still greater actual value. He alleges with particularity the fruitless effort he made to get the company to bring the action; and he alleges generally that there is no collusion between him and the company to confer jurisdiction upon this court. The bill further alleges that the alleged statute was never legally passed,—a point to be enlarged upon later. The alleged statute attempts to fix the rate for yardage and feeding of live stock at the company's yards at South Omaha, which complainant insists is illegal for two reasons: (a) The company is a private corporation, and is not engaged in a public business, and therefore its business is not subject to legislative control; (b) the rates fixed by the legislature are confiscatory. The defendant company makes no appearance. Atty. Gen. Smythe, by plea and answer, makes the following defenses:

1. That the action is the result of collusion between complainant and the company, so as to vest this court with jurisdiction. Briefly stated, the facts are as follows: Mr. Woolworth for several years had received annually a retainer from the company. The company opposed the passage of the act in question by the legislature, and tried to induce the governor to veto the measure. But in all this Judge Woolworth took no part. After the governor had signed the measure, a fellow stockholder wired complainant that his (complainant's) interest in the stock yards was in jeopardy because of the passage of the act. Complainant wired back to employ Judge Woolworth. Later on complainant and Judge Woolworth had a conference. Judge Woolworth accepted employment to oppose the enforcement of the alleged statute in question, and to do all needful

things to protect complainant and his New England friends, to whom he had sold the company's corporate stock. In obedience to his employment, and as was his duty, he served written notice upon the company to take steps to oppose and refuse compliance with the alleged statute. The company, by resolution, refused to comply with the demand, believing that the act was not a valid law, but, recognizing some doubt about it, could not afford, if mistaken, to be subjected to the large penalties. Thereupon this action was brought by complainant, by Judge Woolworth, as his solicitor. Out of all the evidence upon the subject but two facts can be mentioned as in the most remote degree tending to support the attorney general's plea. The one is that Judge Woolworth was annually retained by the company. It was to the interest of the company to have the statute held invalid by the courts. No doubt every stockholder desired that result. No doubt that every stockholder hoped that able counsel would be employed to defeat the statute. But the board of directors could thus desire, and still refuse to incur the penalties. After the action was brought, in due time, on appropriate proceedings, Judge Munger ordered a temporary injunction against respondents. While this was on complainant's motion, the result was to the benefit of every stockholder, and to the company as an entity. Shortly thereafter the company, recognizing the benefit it had received, paid Judge Woolworth for his services to that date. No other showing than this appears from the evidence; and this is not collusion, and is not in the slightest degree in contravention of the rule in equity. Aside from these facts, there could have been no collusion, because there can be no collusion without reason or motive, or to subserve some purpose. The company, although a corporation and citizen of Nebraska, could have brought this action in this court, as complainant, against the Nebraska citizens and officials. The right of the state to pass the act in question is a federal question, concerning which this court would take jurisdiction regardless of citizenship; and, taking jurisdiction by reason of the federal question, this court would also take jurisdiction of the question of whether the act was legally passed; and it would retain jurisdiction, and adjudicate that question, even though the federal question was held to be wholly without merit. All recognize the correctness of this. Therefore it is wholly immaterial whether Mr. Simpson brought the action in this court, or whether the company brought it.

2. The complainant insists that the act was never legally passed, and is therefore not a statute. Each house or branch of the legislature passed a measure, and the governor signed one. But the question is, did each house pass, and did the governor sign, the same identical measure? Because, if both houses did not pass and the governor sign a measure all in the same and precise language, then the measure is not a law, regardless of what was believed or intended. It is now settled beyond all debate that a printed official statute must give way to and be controlled by the official enrollment; and it is equally well settled, and as free from debate, that both the official printed statute and the enrolled bill as filed with the secretary of state must be controlled and determined, in case of dispute, by the

110 F.—51

journals of the legislature and the records in fact made. A few of the authorities on this question are the following: State v. Brookhart (Iowa) 84 N. W. 1064; Koehler v. Hill, 60 Iowa, 543, 14 N. W. 738, 15 N. W. 609; State v. Railroad Co. (Neb.) 84 N. W. 254; and the many cases cited in the three opinions to which I have just referred. The title of the act is very material, and is a constitutional requirement, and without which the act would be utterly void. The title by which the bill passed the senate and the house was as follows: "A bill for an act to regulate stock-yards and to fix the commission for the sale of live stock therein and providing punishment for the violation thereof." The bill originated in the senate with the title above given, and was read each of the three times under said title, and so passed. It then went to the house, and was there read the first and second times by a different title, viz.: "A bill for an act to regulate certain stock-yards by declaring them public markets and defining the duties of the person or persons operating the same and regulating all charges thereof, and providing penalties for the violation thereof." The bill was then read a third time in the house by the first title, and passed the house by the first title. The mere reading of the bill in the house the first and second times by a different title would not vitiate it. But the second title is set out because, when it was signed by the governor, such was the title, as appears from the enrollment. Therefore the governor did not sign the bill as it passed the house and senate, and it is not a law. State v. Railroad Co. (Neb.) 84 N. W. 254; Railroad Co. v. Smyth (C. C.) 103 Fed. 376. The decision of the Nebraska supreme court as to whether a statute was legally passed and in conformity to the Nebraska constitution is binding upon this court; and, if the Nebraska supreme court had not so held, I would so hold. All provisions of a constitution are mandatory. There is no such thing as a directory provision in a constitution. The title of the act is all-essential. The title as well as all provisions of the act must be the work of the legislature. Not a word can be added to or taken from the title by the governor. I have no doubt but that the engrossing clerk made a mistake, and took a copy of the wrong paper to the governor. Some one made the mistake, and it is not material who made it. The mistake was made, and the paper signed by the governor was not the measure passed by the two houses. He must sign it as passed by the legislature, or it is not a law. Therefore the measure in question is not one of the laws of Nebraska.

3. The answer denies that the attorney general is about to take steps to enforce the alleged statute. This raises no issue. That officer cannot affirm the validity of a statute, and then be heard to say he will not enforce it, or that "as yet he does not know what he will do." The act, if valid, says he shall enforce it. The presumption is that he will enforce it. And the question on the prayer for an injunction is not what has been done, but what may be done, under the alleged statute. At all events, the presumption is sufficiently strong that an officer will enforce a statute, when such statute directs him to enforce it, as to authorize the issuance of a writ of injunction, if one should otherwise issue.

4. Complainant insists that, if the statute had been passed conformably to the Nebraska constitution, that it seeks to fix rates governing stock yards, which are of private concern only, and therefore not subject to legislative control. And he also insists that the rates thus fixed are confiscatory. The importance of each of these questions is great. But I shall not pass upon either of them for each of two reasons, although they are in the record calling for determination: (a) I have already decided that the statute relied on by defendants was never legally passed. This entitles complainant to relief, and all the relief he would be entitled to if all the questions in the record were decided in his favor. (b) From a hurried reading, I find these precise questions were recently decided by Circuit Judge Thayer, of this circuit, sitting as a trial court. Cotting v. Stock Yards Co. (C. C.) 82 Fed. 850. From the decree in that case an appeal was taken to the supreme court. I learn that the appeal, in due time, was argued by counsel. And by order of that court I am advised the case has been argued a second time. I assume the case will soon be decided, and, when decided, the decision will rule these two questions in this case. There will be a decree for complainant herein.