STATE v. NORTHWESTERN TELEPHONE EXCHANGE COMPANY.[1]

November 29, 1901.

Nos. 12,763—(21).

## Constitution—Taxes.

The phrase "ordinary business blocks," in the proviso found in the 1896 amendment to article 9 of the constitution of the state, providing for gross earnings tax upon the property of sleeping, drawing room, parlor car, and other companies and owners (Laws 1897, p. viii.), construed.

## Gross Earnings Tax—Property Excluded.

*Held*, that it was the intent by this amendment and the legislative act which followed (Laws 1897, c. 314) to exclude from the operation of the gross earnings plan of taxation therein provided for all property owned by the parties named which does not in a direct manner promote the purposes for which the main business was organized and is carried on. Property devoted to that main business, owned, occupied, held, or used therein and exclusively, is exempt from the ordinary methods of taxation, the gross earnings system being substituted therefor.

## Office Building of Telephone Company.

This rule applied in a case where a telephone company owned, exclusively occupied, held, and used for its company purposes certain business blocks in the city of Minneapolis. *Held*, that as to such property the gross earnings system is a substitute for the ordinary method of taxation.

## Land Used for Storage.

The same company owned a city lot, which was unimproved and unoccupied, except that some personal property belonging to the company was piled or stored thereon during the year 1899, for which year specific taxes were assessed and levied. The intention was to erect a building

[1] Reported in 87 N. W. 1131.

thereon for the exclusive use of the company's business, and such a building was erected in the year 1900. As to this tract the court below found that there was unnecessary delay in adapting this property to the use of the company, and that it was not used or occupied for company purposes during the year 1899, within the meaning of chapter 314, supra. As a conclusion of law it found that this tract was liable to specific taxation for that year. *Held*, that the finding of fact was justified by the evidence, and supported the conclusion of law.

In proceedings in the district court for Hennepin county to enforce payment of taxes delinquent upon real estate for the year 1899 the Northwestern Telephone Exchange Company, as owner of real estate sought to be taxed, interposed an answer. The case was tried before Simpson, J., who found in favor of plaintiff. Upon application of defendant the court certified to the supreme court for its determination the following questions:

"1st. Were the several premises described in the delinquent list, answer and proceedings herein taxable in the ordinary manner in these proceedings, pursuant to the statutes for the enforcement of taxes upon real estate; or are the said premises exempt from such taxation because of the payment of its gross earnings tax by the defendant corporation?

"2nd. Were the premises described as lot 5, block 21, Mill Company's Addition to St. Anthony ['east-side property'], applied with reasonable diligence to use by defendant as a part of its system and plant and were they, in any event, exempt from the tax sought to be collected in these proceedings for the year 1899?"

Modified.

*W. B. Douglas*, Attorney General, *F. H. Boardman*, County Attorney, and *C. L. Smith*, Assistant County Attorney, for plaintiff.

*D. F. Morgan* and *Geo. D. Emery*, for defendant.

COLLINS, J.

In proceedings to enforce the collection of taxes for the year 1899 against three separate parcels of real property owned by the defendant telephone company, situated in the city of Minneapolis, answers were interposed, the cases treated and tried as one, and judgments ordered for the state for the full amount of taxes assessed against each parcel.

As to two, there was no dispute over the facts. Prior to the

year in question, buildings had been erected on each for, and exclusively occupied by, the company in connection with and in carrying on its business as a telephone company having lines extending throughout the city of Minneapolis, the state of Minnesota, and other states. The third tract—unimproved land—was purchased in January, 1899, but a building was not erected thereon until the next year. The only actual occupancy of this tract at the time of the assessment or during 1899 was for storage purposes, and the extent of this occupancy did not fully appear at the trial, but it was exclusive. There is no dispute as to the character of all three buildings. They are quite large, built of brick, stone, and iron, and of fireproof construction, but do not differ in external appearance from other buildings of their size and construction erected for business purposes.

The corporation paid its gross earnings tax for the year 1899, as provided for and required by Laws 1897, c. 314, and the defense interposed by the answers and at the trial was that the collection of specific taxes could not be enforced against any of this property, because of the law last mentioned and a compliance therewith. This chapter provides for substituted taxation for certain properties of a kindred character, including the property of telephone companies. It provides for payment into the state treasury of three per cent. of the gross earnings of each telephone company; and, further, that such payment shall be in lieu of all other taxes and assessments whatever upon each company, its appurtenances and appendages, and upon all its property held or used for, in, or about the construction, repairing, renewal, maintaining, and operating its system or lines, and also upon the capital stock of any such company.

It is possible that under this statute property not within or contemplated by the 1896 amendment to article 9 of the constitution (Laws 1897, p. viii.) may be exempted from specific taxation; but, if this be the fact, the law is to that extent invalid, and must be cut down by construction. So that the real question becomes one of interpretation of the fundamental law itself, and not wholly of the provisions found in chapter 314.

It is to be noticed at the outset that the constitutional provision

did not affect the property of telephone and telegraph companies alone, but included eight different classes, concisely enumerated as follows: (1) Property of sleeping, parlor, or drawing room car companies. (2) Property of telegraph and telephone companies. (3) Property of all express companies. (4) Property of domestic insurance companies. (5) Property of foreign insurance companies. (6) Property of owners of mines and mineral ores. (7) Property of boom companies. (8) Property of ship builders. This classification was followed by the proviso which is in controversy, as follows:

"That nothing in this act contained shall operate to authorize the assessment or taxation of any farm land or ordinary business blocks or property owned by any such corporation, person, firm or company, except in the manner provided by the ordinary methods of taxation."

It is clear that this proviso was added to the preceding provisions in order that some limitation or restriction might be made as to property to which the legislature might apply the gross-earnings method of taxation. The purpose was to exclude some kinds of property belonging to the real or artificial persons specified from the operation of any statute which might be enacted in furtherance of the project. All property excluded by the proviso remained subject to taxation in the prevailing manner; that is, it was to be assessed and taxed as prescribed by the general revenue laws of the state. Railroad property was expressly excepted from the operation of the act, undoubtedly because it was already subject to the gross-earnings system of taxation, and further legislation in respect thereto was unnecessary.

There seems to be no room for misunderstanding as to farm land, for by express language this class of property was excluded. The difficulty arises when we attempt to ascertain what are "ordinary business blocks or property" within the meaning of the amendment. How is it to be determined what are ordinary business blocks or ordinary property? If business buildings, the property of owners or companies mentioned in chapter 314, are of like construction as business buildings, the property of other owners or companies, and of the same outward appearance, are

they "ordinary" within the intent of this language?   Shall general construction and appearance control, or shall this question be determined wholly by ascertaining the use made of such buildings by the owners?   And when we come to consider other property, real or personal, what method of ascertainment can be adopted? To put the inquiry in a more general form: What shall be the rule for distinguishing the ordinary from that which is not ordinary?

Effect must be given to the word "ordinary," which was used to differentiate one class of business blocks or other property from another class or classes, for it cannot be presumed that this word was inserted unintelligently, or without a purpose; and in endeavoring to arrive at its office and design reference may be had to its association with other words and expressions found in close juxtaposition, and with which it is connected.   Great care was taken to exclude from the operation of any law which might be enacted in furtherance of this taxing plan all farm lands, ordinary business blocks, and ordinary property belonging to the persons, companies, or corporations named in the law.   It was seen that the property of these real or artificial persons was, or easily might be, of two classes,—one comprising such property as was absolutely necessary to use and occupy in the production of the revenue or earnings upon which was to be laid a percentage tax; and the other of property which in no manner was necessary to the creation of revenue or the accumulation of gross earnings. One class of the property might well be denominated as strictly legitimate to the business of its owners, while the other would be wholly foreign to that business, and a mere incident.

A telephone company, an insurance or an express company, might own real property which would be absolutely necessary for corporate business, and in continual use every day in its business; but no one can see to what corporate purposes such a company could devote farm land, unimproved town property, or a dwelling house.   A telephone or an express company might properly own horses and wagons as very essential adjuncts to the business of either, but it is difficult to discover to what legitimate use a sleeping car company could put such property, for it would be foreign to the objects for which such a company was organized.

Mine owners sometimes acquire lands of no mineral value—agricultural in every way. Insurance companies, both foreign and domestic, make a common practice of loaning money secured by mortgage upon all classes of real property, and frequently obtain title thereto through foreclosure, thus acquiring city and town property as well as farm lands; none of them being intended, calculated, or used for their own business. They, as well as express companies, erect large business buildings for rental for ordinary—that is, common or customary—business purposes.

This was considered, unquestionably, when the constitutional amendment was drafted, enacted, and adopted, and with this in mind the object was to provide that none of these parties should have substituted taxation for ordinary property, real or personal. It was the intent to exclude from the operation of a gross-earnings system of taxation all property which was simply held as a collateral or distinct enterprise, and did not in a direct manner promote the purposes for which the main business was organized and carried on. As to property devoted to legitimate business, exclusively occupied, held, or used in that business by the parties named, the peculiar exemption from ordinary methods of taxation applied.

The distinction between property which actually contributes to produce earnings which are or may be adopted as the basis of a contemplated percentage tax and that which is not necessary and which cannot properly contribute to produce earnings is plain and easily understood. It has been made clear in a large number of cases in this state in which railway companies have claimed that certain of their real property was not subject to ordinary taxation. If the property is devoted to the specific purpose of conducting and carrying on the very business for the taxation of which the substituted method is authorized, and is of the very class for which the substituted system is enacted, then it is relieved from customary methods; otherwise it is not.

Looking beyond the proviso and the phrase "ordinary business blocks or property," we observe that this constitutional provision requires that the tax upon property which comes within its terms must be "as uniform as reasonably may be with the taxes imposed

upon similar property in said state, or upon the earnings thereof within this state." The words "similar property" refer undoubtedly to railroad property, for that is the only property taxed under the gross-earnings plan in our state. This expression clearly indicates that it was expected that with uniformity of taxation between the property covered by the act and similar property already under the gross-earnings system, there would come uniformity in the controlling rules and uniformity of construction of the amendment or the law. No valid reason can be given for making any distinction between these properties and that owned by railways.

If the telephone company should acquire property wholly distinct in its character from that which it must necessarily secure for the proper conduct of its business,—wholly useless in its business,—the rules already laid down in railway cases would be exactly in point. Such property, whether real or personal, would bear no relation whatever to that which had been secured for the transaction of business, and which must be devoted thereto. If such property is used in and necessary to the business, it is taxable by the substituted method, and not otherwise. If it is not so used, it is taxable in the usual way. When it ceases to be used for the purposes of the owner or corporation, it becomes subject to taxation the same as ordinary property.

It has been well said that:

"The general inclination of the courts has been to hold, that a charter which provides for a certain tax, and 'that no other tax or impost shall be levied or assessed' upon the corporation, will exempt from taxation all the property held by it, necessary to effect the purpose of the incorporation, but not other property held by it which, though convenient and tending to increase the profits, is not necessary to the corporation and its business." Cooley, Taxn. 151.

Two of the tracts in question here were as absolutely necessary for the proper conduct of the purposes and business of the telephone company in 1899 as were the poles in the streets,. or the wires strung thereon, or the subsurface conduits, with their contents. The buildings were occupied exclusively for telephone pur-

84 M.—30

poses, and for nothing else. They were buildings or blocks made necessary by the magnitude of the business, and exclusively devoted thereto. They were not ordinary business blocks, unless what is an ordinary business block is to be determined by outward appearances, and by ignoring entirely the purposes for which such blocks are used. The use must determine this question.

It is argued that the rules which have been adopted for ascertaining what is, in fact, within the gross-earnings laws affecting railways cannot be applied in the case at bar, because this view would render the proviso of no force and superfluous. With such a construction, it is argued, nothing whatever was added to that part of the amendment which preceded it. It is true that without such proviso and with this construction it would have been understood and implied that no property which was not in actual use by the specified owners or companies for their own proper purposes could escape taxation in the ordinary way, but that does not tend to demonstrate that rules for the assessment of railway property are not applicable. In the proviso was an attempt to provide in express terms, so that there might be no misunderstanding, that ordinary business property or other ordinary property should not be exempt from the usual methods of taxation. The line between property within the amendment and that without, but of the same ownership, was to be plainly announced, not left to inference, or for judicial construction, as had been the case in prior years, and with prior enactments.

Our conclusion is that by the receipt of a percentage on the gross earnings of the telephone company for the year 1899 the state received its tax once upon two of the tracts of the land in question, and that a specific tax against such property would be double taxation, and illegal.

This brings us to a consideration of what is known as the "East Side Property." The court found as facts that there was an unnecessary delay in adapting this tract to the purposes of the company, and that it was not used in its business in the year 1899. As a conclusion of law it was held liable and subject to specific taxation that year.

As before stated, this tract was unimproved in the year 1899,

and also unoccupied, except that some personal property belonging to the company—such as poles—were piled thereon. It appears that during that year wires were laid underground leading to the land, that more or less work was done by an architect towards making plans for a building to be erected, and that the manager of the company, early in January, contemplated the erection of such a building; but the court found, as before stated, that the process of appropriating this land to the use of the company by the erection of the building was unnecessarily delayed, and for that reason it was not exempt from ordinary taxation in the year 1899.

In view of all of the facts, we are of the opinion that the questions of unnecessary delay in the construction of this building and the use to which the property was devoted in 1899 were to be determined from all of the evidence, and we conclude that the testimony justified a finding against the company on these points.

Finally, except as to the east-side premises, the answer to the question first certified is that the property in controversy is exempt from ordinary taxation, "because of the payment of its gross-earnings tax by the defendant corporation."

We answer the second question in the negative, and that the east-side property was not exempt.

Case remanded, with instructions to proceed in the court below in accordance with the views herein expressed.