STATE v. TWIN CITY TELEPHONE COMPANY.[1]

May 22, 1908.

Nos. 15,274—(2).

**Amendment of 1895 Construed.**

The constitutional amendment of 1895 (chapter 7, Laws 1895), authorizing the legislature to impose either a property or a gross earnings tax upon telephone and other corporations mentioned, construed, and *held* an extension to the corporations therein named, without change or modification, of the gross earnings system of taxation as theretofore in force as to railroad corporations.

**Tax upon Telephone Companies.**

Chapter 314, Laws 1897, imposed such tax upon telephone companies doing business in the state, and provided that the same should be in

[1] Reported in 116 N. W. 835.

lieu of all other taxes and assessments upon property held, owned, and used by the companies in the conduct of their business. *Held* authorized, and valid under the constitutional amendment referred to. State v. Northwestern Telephone Exchange Co., 84 Minn. 459, approved and followed.

### Provisos in Statutes.

Provisos appended to legislative enactments are not intended to impair or destroy the main purpose, nor to enlarge the meaning or effect, of the statute to which they are added, but, on the contrary, to exclude from the operation thereof something which might otherwise come within its scope.

### Same.

They are often inserted out of an abundance of caution, to preclude a possible construction at variance with the intent of the lawmakers. Where such a purpose is apparent, they are construed strictly, and their scope limited to avoid a result manifestly not in harmony with the legislative intent.

Judgment having been entered in the district court for Ramsey county against certain real estate of defendant for the delinquent tax for the year 1902, defendant made application to have the judgment set aside and for leave to answer. This motion was granted, the matter was tried before Hallam, J., who sustained the defendant's objections, and from the judgment of dismissal plaintiff appealed. Affirmed.

*Richard D. O'Brien* and *Patrick J. Ryan*, for appellant.

It is clear that the proviso intended to define a class of property which should never be included in any scheme which might be devised by virtue of the authority contained in the body of the law. The legislature intended by this enactment to permit the formulation of some scheme of taxation which would reach unusual forms of property not susceptible of adequate taxation under the existing system of direct valuation and assessment of taxable objects. And further, it was the apparent intention of the legislature to forbid the application of any such unusual and extraordinary method of taxation to a certain specified class of property. The class which it intended should be excluded from any unusual scheme which might be proposed it described as farm land and ordinary business blocks and property. Nothing in the act, it declared, could operate to authorize the assessment of such property in any but the ordinary way.

The proviso makes no reference to the gross earnings system.    It is not merely an unnecessary limitation upon the manner in which only one system permitted by the body of the act might be applied.    It is, on the contrary, a provision independent of and in conflict with any possible system authorized to be adopted.    It declares in effect that no matter what system may be adopted under the amendment certain property shall never be taxed with reference to that system or in any but the usual and existing manner.    If the class of property intended to be covered by the proviso had been definitely described, it would hardly have been questioned that this is the proper relation of the proviso to the amendment.    If the amendment had been made to read: "Nothing in this act shall operate to authorize the assessment of land of any description in any but the ordinary manner," it would not have been suggested that the word "land" in this connection might mean land not used for telephone purposes.    It would have been too clear for question that the proviso would operate simply and surely to define a class of property to which no unusual method of taxation could be applied.    It must be equally certain that the proviso as it stands does nothing more or less than describe a class of property which must be taxed in the ordinary way and upon which any other system applicable to its owner or his property cannot operate.

The amendment does not, we submit, provide for the gross earnings tax alone.    It clearly authorizes the taxation of any portion of the property of any of the companies named in any manner the legislature may choose to adopt.    And clearly a proviso specifying a class of property which must be excluded from every system authorized to be adopted defines a class without reference to any particular system. The question must be: "What are ordinary business blocks and property," without reference to any particular method of taxation.    What do the words mean standing alone?    Must not one construction be placed upon the proviso wholly without regard to any form of special taxation which may be adopted pursuant to the amendment?    There cannot be a different construction of the proviso for every conceivable scheme of taxation which the amendment authorizes the legislature to adopt.    The former decision of this court must amount to a ruling, therefore, that no matter what system of taxation may be adopted with reference to these companies the legislature may never extend its oper-

ation so as to include within it property owned by such companies, but not used by them in the maintenance or operation of the business in which they are engaged. But if any other method than the tax on gross earnings were in contemplation this construction would be entirely inapplicable and without justification and might be entirely out of harmony with the scheme that might be adopted.

We think that the former decision adopted a construction applicable to only one of the innumerable systems of taxation authorized by the amendment; that it determined the meaning of this proviso with reference to but one of the many methods provided for, that it will be inconsistent and out of harmony with a great many tax schemes that may be conceived of and which are within the operation of the amendment, that its only justification is its supposed applicability to only one of the authorized systems, and that because of these things it cannot possibly express and give effect to the true intent of the proviso. The language of the court is in no respect an equivalent of that of the amendment. It is not a statement of the same idea in different language. The language of the court and that of the amendment would convey entirely different ideas to the ordinary man. It is hardly conceivable that a person having in mind the idea of excepting from the operation of the amendment property not used in or about the maintenance or operation of the business of one of the companies to be taxed would express that idea by saying that nothing in the amendment should operate to authorize the assessment of farm land or ordinary business blocks and property in any but the ordinary manner. The two statements are so completely foreign to each other, that it seems almost superfluous to argue that both cannot be an expression of the same idea, and while we are aware that the placing of the provision of the statute side by side with the language of the court interpreting its meaning in the light of the object and purpose of the whole law will usually be a wholly inconclusive argument against the correctness of the interpretation, yet we submit that where the whole provision is considered, as in this case, and it expresses an idea so wholly foreign to the language substituted by the court in its interpretation a doubt is raised worthy of consideration. It justifies a careful re-examination of the reasoning applied in reaching an interpretation apparently so far removed from the intent of the law.

104 M.—18

It is apparent, of course, that the court reached this seemingly divergent result by applying to the amendment the rule which has been heretofore applied to the gross earnings laws. It treated the proviso as making, with reference to the amendment, a distinction between kinds of property which has heretofore been made and applied in the construction of laws relating to the taxation of railroad companies. But what is the justification for such treatment? The mere fact that this is a familiar distinction between classes of property for the purposes of taxation by reason of the current operation of such laws is not alone sufficient. The fact that it is applicable to one of the systems which might be enacted under the amendment will not alone justify it. The requirement of the amendment that laws enacted thereto should apply with equal force to like companies does not control the terms of the proviso, because railway companies are taxed by the gross earnings system upon all their property except such as is not used in the maintenance or operation of the railway business. On the contrary, under the accepted rules of statutory construction, the proviso itself controls the entire proposed amendment. Furthermore that provision relates only to property included in the amendment and the property of railway companies is excluded therefrom. Again, if the construction is the correct one, and it was intended to make the existing rule now applying to railway companies applicable to this amendment, it must be held to apply with equal force to the words "farm land" and if the meaning of the terms "ordinary business blocks and property" is to be determined by such a test, the meaning of the term "farm land" must also depend upon the question of whether or not "farm land" is used for telephone, express, or other purposes enumerated in the law.

Manifestly if the proviso as interpreted is a meaningless provision with reference to the body of the amendment, all possible arguments in favor of the adopted interpretation will fail. We submit, that under the existing railroad gross earnings law the distinction between property appropriated to railway uses and property not so appropriated satisfied a sound purpose in taxation. We submit, that such a distinction under this amendment is wholly without purpose and that there can be no possible reason for its existence. But the gross earnings tax was not a full tax, and the courts having in mind the intent and purpose of the law solely to encourage construction of railway lines

excluded property of railway companies not devoted to that end from the operation of the commuted system of taxation. The law did not intend to subsidize any other business than the operation of railway lines, but did intend in that particular way to grant a bounty to persons organizing and operating a railway company.

Railroads were not originally taxed by the gross earnings method because that was the most apt and available method of ascertaining and taxing the full value of its property. This amendment intends to fully reach and tax every item of property owned by these companies and to compel them to pay their full share of taxation. The body of the amendment does not intend to authorize a tax less in rate than that applied to the property of other less favored companies. All the property included in the operation of the amendment under whatever system which may be adopted must be fully and fairly taxed. All the property excluded from the amendment by the proviso must be fully and fairly taxed. If then both the amendment and the proviso clearly demand of the property included in each that there shall be an adequate taxation, can it be reasonably said that the sole purpose of the proviso was to create a class of property which should only exist for the purpose of full taxation as compared to the rate of taxation to be applied to the property included in the body of the amendment? The amendment was not adopted in order to permit the legislature to subsidize the classes of business enumerated therein, but on the contrary, intended to give power to the legislature to reach property that could not be adequately taxed under the prevailing system.

Assuming then that the proviso did not attempt to exclude from the operation of the amendment only property not used in the maintenance and operation of the particular business to be taxed, it becomes necessary to seek for some other interpretation of its language. Laying aside that interpretation it seems to us that in order to give any reasonable effect to the language of the proviso the court must construe it as intending to enforce either of two purposes. The first, that it was the intent of the legislature to distinguish between property that is ordinary with respect to taxation, and property that is unusual or extraordinary with reference to taxation. The second, stated broadly, that it was the intent of the legislature to take out of the operation of the amendment and to leave to the local governmental subdivisions of the

state the right to tax the local property of these companies, to the end that such local property might contribute to the maintenance of such local subdivisions their just share of taxes. Of these two possible purposes we think it is clear that the latter is the one intended to be made effective by the proviso.

The only conceivable reason for distinguishing between various forms of property is to make effective the purpose to leave some property to local taxation. Of course if it was the intent of the legislature to make a distinction between the usual and unusual property with reference to taxation, this purpose would be accomplished. But there is no sound reason for the existence of such a purpose in itself. There is no valid reason for such a division of property apart from the idea that such a division would result in leaving some part of the property of these companies liable to local taxation. Such an intent can only be considered, in so far as it would have the result desired. The conclusion that the proviso was not intended to distinguish between property easily reached and property not easily reached for the purpose of taxation is strengthened by an examination of the terms of the proviso. It declares that nothing in the act shall operate to authorize assessment of farm lands or ordinary business blocks or property. If it were intended by "ordinary property" to mean ordinary with reference to taxation, it would have been wholly unnecessary to make special reference to farm lands, for farm lands would have been clearly ordinary property in such sense, and for the same reason the term "business blocks" would have been equally superfluous. And clearly any construction of the proviso denying absolutely any meaning to these two terms will disregard the most prominent and controlling terms employed. Since, therefore, the division of property into the usual and unusual could not have been in itself the only purpose, the proviso must be construed solely as defining a class of property which shall be left to ordinary taxation in order that local governments shall derive from local property their just share of revenue.

These companies own and occupy valuable sites and buildings in the business sections of some of the larger cities in the state. The comparatively high cost of maintaining the government of such cities is created by the necessity of providing for such property fire and police protection; of maintaining safe, clean, and adequate access to

such property, and by other innumerable necessities arising out of congestion of valuable property in such centers. It is just, therefore, that such cities, villages and counties, should have the right to assess against such property its proportionate share of the burdens of maintaining the government under which it exists. To take this valuable property from the tax list of such subdivisions materially decreases the property availiable for taxation, and correspondingly increases the burden of other property in such locality.

*Harlan P. Roberts,* for respondent.

The whole argument of the state on this matter is based upon the proposition that the purpose of the amendment was to authorize the taxation of the property of the persons or companies mentioned in the amendment which could not be reached by the ordinary methods of taxation; in other words, appellant claims that the sole reason for passing the amendment was to enable the state to impose a franchise tax, or a tax upon intangible property which was escaping taxation. Now, if such were the purpose of the amendment, there would be much force in the argument of counsel. But we do not see how it is possible to limit the effect of that amendment to any such extent, or to glean from it the conclusion that the legislature had in mind only the taxation of intangible property. The only thing that would tend to support the contention they make, is the proviso at the end of the amendment; every other portion of the amendment shows that the intention of the legislature in proposing the amendment was to authorize the taxation of all property of the various companies or individuals in the state, in some extraordinary or unusual way.

It must be borne in mind in the discussion of this question, that there were included in this amendment nine different classes of companies, to wit: sleeping car companies, telegraph companies, telephone companies, express companies, domestic insurance companies, foreign insurance companies, mine owners, boom companies and ship builders. It is claimed by the appellant that the legislature in framing this amendment could not have had in mind especially the levying of a gross earnings tax. It is possible that as to some of the companies mentioned, it was not contemplated that there should be a gross earnings tax; but certainly the gross earnings tax was in contemplation,

because in the amendment itself we find a reference to the imposition of a tax "upon the earnings thereof within this state," and having in mind the assessment of a gross earnings tax upon some of the companies mentioned ·in the amendment, the legislature would naturally have in mind also the principles that applied to the collection of gross earnings taxes from the companies at that time paying a gross earnings tax, namely, the railroad companies doing business in the state.

The proviso was undoubtedly added for the purpose of preventing an abuse of the privileges of this amendment by passing a law which should permit a corporation or individual owning one of the classes of property described in the amendment to pay a commuted tax· in lieu of taxes upon all their property. Such a commuted tax has been upheld in other states where the constitution and the law permitted commuted forms of taxation, where it included all of the property of the corporation whether used in connection with the business of the corporation or not. And, lest such a law should be passed in Minnesota, the framers of this constitutional amendment added the proviso in question, to prevent a gross earnings tax, or any other form of commuted tax, from including in the property covered .by such a tax, farm property, ordinary business property, or other ordinary property, thus covering all property which was not used in the business of the company, paying such commuted taxes. It is absolutely impossible to make a satisfactory explanation of the proviso under consideration in any other way.

By consent *E. A. Prendergast* and *Cobb & Wheelwright* filed a brief in behalf of the Northwestern Telephone Exchange Company.

A gross earnings tax under the laws of this state is a property tax and not a franchise tax. Minneapolis & St. L. R. Co. v. Koerner, 85 Minn. 149; County of Ramsey v. Chicago, M. & St. P. Ry. Co., 33 Minn. 537; County of Todd v. St. Paul, M. & M. Ry. Co., 38 Minn. 163. See also State v. St. Paul Union Depot Co., 42 Minn. 142. From the foregoing cases it appears that the essential object of the "commuted" or "substituted" form of taxation necessarily excludes from the ordinary methods of taxation any form of property which is exclusively devoted to a railroad use. Any other legislative or judicial rule of construction would be manifestly subversive of the principle under-

lying the substituted or commuted tax. So that in 1895, when the legislature framed the constitutional amendment before us, it knew of this universal principle applicable to the commuted tax and of the decisions of this court interpreting the same, and is presumed to have acted in accordance therewith; and doubtless intended that all property ·of the eight different classes specified in the amendment, which was exclusively held and used by them for those purposes for which they existed, should come within the exemption. This is very apparent, because an inspection of the gross earnings tax law of 1897 shows that almost identical language was employed respecting the kind of property of telephone companies to be exempted as that used in the gross earnings tax law of railroad companies under consideration in the cases cited from 33 and 38 Minnesota.

Again it was the manifest purpose of the law to stimulate and promote the extension of the telephone business. In 1893 the Bell telephone patents expired, and by 1895 it was quite evident that independent companies would enter the field. In 1895 the long distance transmitter had been perfected, not, of course, to the same extent as it has now, and it had been successfully demonstrated that long distance telephoning was entirely practical. In 1895 the use of the telephone had become general in this state, and almost a necessity, and it was then foreseen that the extension of long distance toll lines throughout the state would add materially to the comfort, wealth and convenience of the people. Hence the legislature and the people could well understand, the same as they had in the case of the railroad companies, that a tax on earnings, as a substitute for other forms of taxation, would be a benefit to the telephone companies and promote and stimulate the industry.

In the light of these facts, we confidently assert that the intent and purpose of the legislature, as shown by the history of the times and the existing state of affairs, was to provide for a substituted form of taxation for telephone companies, similar in every respect to the then only known form of such taxation, which then known form exempted from the ordinary methods of taxation all property actually devoted to railway uses. The framers of the amendment prefixed the word "farm" before the word "land." That shows what they intended.

They purposed exempting "farm land" and "ordinary business blocks or property."

Again, in the gross earnings law itself (Laws 1897, c. 314), we have a second legislative construction placed upon the word "land," for the law provides for the payment of a gross earnings tax, "which said payment shall be in lieu of all other taxes and assessments whatever upon each said telephone company or system, its appurtenances and appendages, and upon all its property held or used for, in or about the construction, repairing, renewal, maintaining and operating its system or lines."

The administrative officers of the government. have also construed this amendment as excluding from the ordinary methods of taxation real estate and buildings of telephone companies which are devoted exclusively to the operation of the business; for this company has its terminals in Minneapolis, St. Paul, Crookston, Glenville, Marshall, Northfield, Windom and Winona located in its own buildings, and no attempt has been made to tax these buildings in the ordinary way.

To construe the word "land" in the amendment under consideration as including the terminals of telephone companies leads not only to harsh and absurd results, but thwarts the will of the framers and people.

The analogy between railroad carriers and telephone companies is very close. Each is a public carrier, the only real difference between them being as to the character of the thing transported. Each has conferred upon it the power of eminent domain in order to secure a suitable right of way and terminal facilities. The word "railroad" comprehends not only the equipment and road way, but the sites of depots, warehouses and other real estate connected with business. State v. Canadian, 100 Me. 202. Its depots in country villages and its terminals in large cities, consisting of its passenger and freight depots, its tracks and yards, are all exempted from the ordinary forms of taxation because from the use of this class of property an income is derived by the railway companies from which a percentage is received by the state in place of an ad valorem tax. A construction of a gross earnings tax law governing railroads which did not exclude their terminals from an ad valorem tax would not only be regarded as unjust

but absurd. It is not even to be conceived of. The same thing is true of telephone companies.

The buildings in which these telephone appliances are located are just as much devoted to the legitimate business of the telephone company as railroad terminals are devoted to the legitimate business of the railroad company. They necessarily contribute to produce the earnings upon which the percentage tax is paid. They are in fact "terminals" in telephone nomenclature. Phrases and words which are frequently employed in the railway business are in common use in the telephone business. For instance, our published rates for telephone service are referred to as "tariffs." The Northwestern Telephone Exchange Company connects with a large number of telephone companies operating by means of local exchanges in villages or cities in this state, and those companies charge the Northwestern company a "switching charge" for transferring the message through their exchange to the person called by the patron of the Northwestern company. So that by analogy it becomes apparent that in the case directly before us the building and appliances therein which are here sought to be taxed in the ordinary method are the "terminals" in St. Paul of the Twin City Telephone Company. No reason can be logically assigned why the terminals of a railway carrier in St. Paul should be free from an ad valorem tax and the terminals of a telephone carrier should be taxed in the ordinary way, when each of them are subject to the payment of a percentage tax on earnings.

Again, giving to the word "land" its strict construction, the question arises whether or not it was intended that the fixtures and equipment in the building in question are to be subjected to the payment of the ordinary tax. The value and cost of the buildings and real estate of the Minneapolis exchange of the Northwestern company is $329,-901.33. The value and cost of the telephone equipment in that building is $340,065. A portion of this equipment, if the word "land" is to be given its ordinary meaning is so attached to the building that it would be subject to an ad valorem tax if the building was. The total value and cost in Minnesota of the real estate and exchange equipment of the Northwestern company and buildings actually owned by it is over one million dollars. If this company has to pay a three per cent. tax on its gross earnings, and in addition thereto pay the ordi-

nary tax on these buildings and a part of its exchange equipment, it will be paying a higher rate of taxation than that paid by any other corporation within the state. Certainly it was never the intention of the legislature to penalize this class of corporations by the enactment of this percentage tax law; and yet, if counsel for appellant are right, such would be the effect of sustaining their views.

By consent *E. A. Prendergast* and *W. M. Steele* filed a brief in behalf of the Duluth Telephone Company.

Is real estate owned by telephone companies or persons engaged in supplying telephone service to the public which has been appropriated to and is reasonably necessary for the service supplied, "land" within the meaning of statutes or popular enactments providing for the taxation of the properties of such corporations or persons by a system method? Does it not, for the purposes of taxation partake more of the character of personal property than of real property, and is it not the wiser policy to consider it in that light and accord it that character in view of the use to which it is devoted, the interest of the entire public in that use, and the disastrous consequences possible to follow holding it to be land, subject to local assessment and taxation? The companies using it are engaged in a public service, a service in which all the public—not merely local territorial subdivisions of it—have an interest. A sale of any local part of their equipment for taxes, as for instance, the lots on which an exchange building was located, would work a disintegration of the system supplying the service, a severance of its entirety and a destruction of that service. Nor would the injury fall alone on the local community in which the particular parcels of land sold were located, but in some degree also upon all other communities supplied with telephone service by the system thus disrupted. Such is the recent rule established in some jurisdictions. Steiner's Appeal, 27 Pa. St. 313; Plymouth v. Colwell, 39 Pa. St. 337; Yellow River v. Wood, 81 Wis. 554; Fond du Lac Water Co. v. City of Fond du Lac, 82 Wis. 322; Chapman v. Oconto, 89 Wis. 264; State v. Anderson, 90 Wis. 550; State v. District Court of Ramsey County, 31 Minn. 354, 358; Town of Washburn v. Washburn, 120 Wis. 575; Burlington v. Lancaster, 4 Neb. 293; California v. Mecartney, 104

Cal. 616; Huntington v. Central Pac. R. Co., 2 Sawy. 503; San Francisco v. State Board, 60 Cal. 12.

BROWN, J.

In proceedings to enforce the payment of delinquent taxes defendant had judgment, and the state appealed. The facts are as follows: Defendant is a telephone company organized and existing under the laws of this state, and has paid the gross earnings tax imposed by chapter 314, p. 581, Laws 1897. The property sought to be taxed in this proceeding is certain real estate owned by defendant and used exclusively in the conduct and operation of its business, and by the employment of which it derived the income upon which the gross earnings tax was assessed and paid. The statute above referred to, imposing this form of taxation upon telephone companies, expressly exempts from general taxation all property of the company necessarily used and employed in furtherance of its business. In other words, the statute declares that the earnings tax shall be "in lieu of all other taxes and assessments" upon property used in connection with the operation of its telephone affairs.

It is the contention of the state that this exemption is unconstitutional, and that all property of telephone companies is taxable precisely as is the property of other citizens, whether used in the company's business or not. This question was raised on the oral argument in the case of State v. Northwestern Telephone Exchange Co., 96 Minn. 389, 104 N. W. 1086; but, owing to the fact that it was not covered by the briefs, and the members of the court were not agreed upon it, the question was reserved for future consideration. It now comes before us directly, and has been fully argued. Whether the exemption referred to is unauthorized and void depends upon the construction to be given the constitutional amendment of 1895 (chapter 7, p. 14, Laws 1895), authorizing the legislature to impose a gross earnings tax upon telephone and other corporations therein mentioned, and under which the statute was enacted.

The amendment proposed by the legislature, as appears from the enrolled bill on file with the secretary of state, authorized in appropriate language the legislature to impose a gross earnings tax upon such

companies, but concluded with the following proviso: "Provided further that nothing in this act contained shall operate to authorize the assessment or taxation of any farm land or ordinary business blocks or property owned by any such corporation, person, firm, or company, except in the manner provided by the ordinary methods of taxation." The amendment was published with the Session Laws of 1895, but by some mistake, either of the printer or the person copying it for him, the word "farm" preceding the word "land," as found in the original proviso, was omitted; so that the proviso as there printed does not, in respect to that word, correspond to the enrolled bill. The mistake was not noticed by the attorney general, who, in compliance with section 310, G. S. 1894, furnished the secretary of state a synopsis of the proposed change in the constitution for distribution among the voters, and the word "farm" does not appear in the document issued by him. The amendment was adopted by the people, but the proposition went upon the official ballot by a reference to its title and the section of the constitution amended, and was not bodily before the voters at the election. The governor's proclamation announcing the adoption of the amendment referred to the act as contained in the session laws.

It is urged by the state that the amendment as published and as explained by the attorney general was the only one voted upon or adopted by the people, and that the authority of the legislature to embody in the statute enacted thereunder the exemption mentioned must be determined by the language of the amendment as so published, with the word "farm" omitted. It is an elementary rule, as respects statutory enactments, that where a discrepancy appears between the enrolled bill as filed with the proper custodian and the copy as printed for distribution the former prevails, and is conclusive of the terms and provisions of the statute actually enacted. Sjoberg v. Security Savings & Loan Assn., 73 Minn. 203, 75 N. W. 1116, 72 Am. St. 616; De Bow v. People, 1 Denio, 9; Simpson v. Union Stockyards Co. (C. C.) 110 Fed. 799; State v. Jones, 6 Wash. 452, 34 Pac. 201, 23 L. R. A. 340, and note; Epstin v. Levenson, 79 Ga. 718, 4 S. E. 328; Potter v. State, 92 Ala. 37, 9 South. 402. If this rule applies to constitutional amendments, where there is a difference in language between the enrolled amendment as proposed by the legislature and on file with the secretary of state, and the copy thereof as published

for distribution among the people, it would be conclusive against the position taken by the state.

But conceding, for the purposes of the case, that the rule does not apply, and that the amendment as published and understood by the people when voting upon the question of its adoption controls as to language and intent, and conceding further, without stopping to consider the question, that the regularity of the election and the proceedings looking to the adoption of the amendment may be collaterally called in question in this manner, and the record of legislative enactments required to be made by the constitution and laws of the state thus impeached, we proceed to the question whether there is in any event any practical difference between the enrolled bill and the published copy; in other words, whether the absence of the word "farm" changes in any substantial respect the intent and purpose of the legislature and the people in the adoption of the amendment.

The general rule that statutes must be so construed as to give effect to the legislative intent applies as well to the constitution or amendments thereof. Taylor v. Taylor, 10 Minn. 81 (107). The statute or section of the constitution construed must be taken by its four corners, and effect given to all its language, and the main purpose and object as thus made manifest effectuated. The history of the subject legislated upon may be considered, where the language is at all ambiguous or doubtful, and the uniform construction given a statute subsequent to its enactment by the tribunal or officers charged with the duty of executing it is entitled to special consideration. State v. O'Connor, 81 Minn. 79, 83 N. W. 498; O'Connor v. Gertgens, 85 Minn. 495, 89 N. W. 866. In fact, all pertinent matters bearing directly upon the object and purpose of the law, and tending to its illumination and a disclosure of the intention of its framers, are legitimate subjects for consideration by the court in assigning to it its appropriate place among the laws of the state. In the light of these general rules we come at once to the question before us.

The subject of taxation of corporations in this state has been very prominent in the public mind for many years. Efforts in various forms have frequently been made through legislative enactments to devise means by which to compel them to contribute to the public revenues

in harmony with their ability to pay as disclosed by the volume of business transacted or their discoverable property assets. The constitutional mandate of equality and uniformity has restricted legislation in this line for the most part to the system known as the property tax, the practical defects of which, as applied to corporations, are obvious. Seligman, Tax. 61. These defects, particularly the difficulty of reaching property owned by corporations doing business in and through the different counties of the state, the unsatisfactory results of taxing it wherever found, giving rise, as was often the case, to litigation involving questions of taxable situs, the inequality of assessments made by the numerous assessors, and the failure of this method to place upon the corporations an equitable proportion of the public burden, prompted the legislature to devise as to them a new form of taxation. To accomplish this greater latitude than that given by the equality provision of the constitution was deemed necessary, and the amendment in question was proposed to the people and by them adopted.

The question is: What was intended thereby? We have had for many years a gross earnings system of taxation as to railroad companies, and it has proved on the whole satisfactory, equitable, and just, both to the state and to the corporations thus taxed. The system has always been well known and well understood by the people. It is in practical effect the substitution of a tax upon the earnings for a tax upon the property producing it. Under it all property owned, held, and used by the railroad company in the conduct of its business is and always has been exempt from general taxation. In fact, the law imposing the tax expressly so provides. As remarked by the court in County of Ramsey v. Chicago, M. & St. P. Ry. Co., 33 Minn. 537, 24 N. W. 313: "This theory, however, necessarily rests upon the assumption that the property of the corporation will be held and used by it for those purposes for which the corporation exists, and that by such use an income will be derived, the percentage of which is received by the state in place of a tax upon the property." No attempt has ever been made in this state, nor in any other state in which the system has been adopted, so far as our examination has extended, to tax both the income and the property necessarily used and employed in producing it. Seligman, Tax. 216; note in 57 L. R. A. 45. As stated, the sys-

tem prior to the adoption of the constitutional amendment in question was in force in this state only as to railroad companies. The immediate question is whether by that amendment the people intended to extend it as heretofore existing to other corporations, or whether, as urged by the state, it was the intention to extend it in part, but with the qualification that the property, as well as the earnings therefrom, should be taxed. The solution of the question depends almost wholly upon the construction to be given the proviso appended to the constitutional amendment.

A careful consideration of the question leaves no serious doubt but that the legislature and the people intended by the change in the law to extend the well-known system of gross earnings taxation to other corporations without change or modification. It was practically so held in State v. Northwestern Telephone Exchange Co., 84 Minn. 459, 87 N. W. 1131, where this constitutional amendment was under consideration. Though the precise question was not there involved, the decision in that case has since been treated as correctly construing the amendment, and has been acted upon by the executive officers of the state charged with the duty of enforcing it. That there was no intention of changing the system, and of taking a radical, and perhaps unjust, step towards double taxation, is clear. At least, such a step should not be declared except upon specific legislative expression. No reasons are present to justify the conclusion of an intention by this amendment to inaugurate a new system. No complaints had been made of the system as theretofore existing, and, as already stated, it had proved satisfactory up to that time both to the people and to the corporations thus taxed. We are therefore fully justified by the history of the subject, the legislation subsequent to the adoption of the amendment, and the acquiescence therein by the people and the executive officers of the state charged with the enforcement of the law, in concluding that the purpose was to extend the gross earnings system as then existing and known to the other corporations named in the amendment.

The proviso, fairly construed, does not militate against this view. Provisos of this character are not intended to impair or destroy the main purpose, nor to enlarge the meaning or effect, of the statute to which they are added, but, on the contrary, to exclude from the opera-

tion thereof something that might otherwise come within its scope. They are often inserted out of an abundance of caution, to preclude a possible construction at variance with the intent of the lawmakers. 2 Sutherland, St. Const. 351. Where such purpose is apparent, they are strictly construed, and their scope limited to avoid a result manifestly not in harmony with the legislative intent. Such was the purpose of this proviso. What the framers had in mind was, not affirmatively to declare that ordinary property owned by the corporations concerned and not employed in their business should be taxed, for it was then taxable under existing laws, but to preclude the possibility of the amendment being made the basis or foundation of an exemption of all their property. To make that end plain, and to preclude a possible ground of misinterpretation of the scope and purpose of the amendment, was the sole office of the proviso. It was manifestly not the intention to single out the corporations mentioned in the amendment, and impose upon them a tax both upon the income and the property producing it, in face of the fact that such taxation has never before been imposed upon any person or corporation by the laws of the state. This would be a clear departure from the uniform policy of the state, following the constitutional mandate of equality in matters of taxation, and should not be judicially declared the purpose of the people, except upon plain and explicit language. Board of Co. Commrs. of Rice Co. v. Citizens' Nat. Bank of Faribault, 23 Minn. 280.

Our conclusion, therefore, is in harmony with that reached by the learned trial court, and its order in the premises is affirmed.

JAGGARD, J. (concurring).

I am unable to find any reason why a telephone company should not pay a tax on land on general lists in addition to the tax on gross earnings, if a constitutional statute should so require. It is naturally within the legislative power, unless restricted by some constitutional provision, to enact such statute. That previous experiments in taxation on gross earnings may have been in commutation of all other taxes, in no wise restricts or tends to restrict the exercise of legislative power to tax in part on general lists and in part through a levy on gross earnings. That a wrong construction had previously been

placed upon a particular statute by public officials would neither repeal nor avoid it. The question here seems to me to be whether there is such a constitutional statute now in force in this state. This turns upon the reading of the proviso referred to in the majority opinion. If that proviso reads as the telephone company contends, viz., "that nothing in this act contained shall operate to authorize the assessment or taxation of any farm land or ordinary business blocks or property owned by any such corporation, person, firm or company except in the manner provided by the ordinary methods of taxation," it would seem quite clear that only farm lands or ordinary business blocks can be taxed on general lists. If, as the state claims, this proviso reads, not "farm lands," but "land," then lands generally, including ordinary business blocks, must be taxed on general lists. The enrolled bill controls. It follows that, inasmuch as the premises here sought to be taxed are not farm lands or ordinary business blocks, they were not subject to ordinary taxation on general lists.