## RAILWAY EXPRESS AGENCY, INC. v. MIKE HOLM.[1]

May 2, 1930.

No. 27,823.

*Kellogg, Morgan, Chase, Carter & Headley,* for appellant.

*Henry N. Benson,* Attorney General, *James E. Markham,* Deputy Attorney General, and *William K. Montague,* Assistant Attorney General, for respondent.

WILSON, C. J.

The Railway Express Agency, Inc. successor to the American Railway Express Company, appealed from an order sustaining the defendant's demurrer to an alternative writ of mandamus.

Plaintiff seeks to have defendant register its motor vehicles and issue registration certificates without the payment of the registration tax. Much the same controversy has been here before. Amer-

[1]Reported in 230 N. W. 815.

ican Ry. Exp. Co. v. Holm, 169 Minn. 323, 211 N. W. 467, and again 173 Minn. 72, 216 N. W. 542.

Plaintiff pays a tax equal to eight per cent of its gross earnings. L. 1913, c. 454, § 2, G. S. 1923 (1 Mason, 1927) § 2268. The statute provides that "the payment of such sum  *  *  *  shall be in full and in lieu of all taxes and assessments upon its property." This legislation was originally authorized by art. 9, § 17, of our state constitution, which became operative under a constitutional amendment in 1896. Section 17 was later superseded by art. 9, § 1, adopted as an amendment in 1906.

In 1920 our constitution was amended by adding the present art. 16 thereof. This provided for the establishment of a state trunk highway system and the creation of a fund for the construction and maintenance thereof. Section 3 of said article is as follows:

"The legislature is hereby authorized to provide, by law, for the taxation of motor vehicles, using the public streets and highways of this state, on a more onerous basis than other personal property; provided, however, that any such tax on motor vehicles shall be in lieu of all other taxes thereon, except wheelage taxes, so-called, which may be imposed by any borough, city or village. Any such law may, in the discretion of the legislature, provide for the exemption from taxation of any motor vehicle owned by a nonresident of the state, and transiently or temporarily using the streets and highways of the state. The proceeds of such tax shall be paid in to said trunk highway sinking fund."

L. 1929, p. 502, c. 361, provides:

"Section 1. Motor vehicles using the public highways of this state and owned by companies whose property in this state is taxed on the basis of gross earnings shall be registered and taxed as provided for the registration and taxation of motor vehicles by Laws 1921, Chapter 461, as now or hereafter amended.

"Sec. 2. The tax on basis of gross earnings paid by any such company shall be in lieu of all other taxes upon its property as now

provided by law, except motor vehicles using the public highways of this state."

By the constitutional amendment of 1920 the people of the state contemplated spending large sums of money in the development of the modern highway system. It was determined that the burden should fall upon the owners of motor vehicles using our highways. This constitutional amendment subjected motor vehicles to taxation "on a more onerous basis than other personal property."

Express companies and other corporations paying the gross earnings tax "in lieu of all taxes   *   *   *   upon its property" did not directly contribute to the fund out of which the highway system is maintained though they used the highways with other motor vehicles. The legislature was not satisfied. It claimed the right to increase the taxes of such corporations. The state claims that the 1929 law was passed solely for that purpose. If so, it was an indirect method but permissible if legally possible. Perhaps the legislature sought preferentially to benefit the highway fund. We construe the 1929 law as an effort to impose the gross earnings tax on all of the property of such companies except their motor vehicles. The intention was impliedly to amend G. S. 1923 (1 Mason, 1927) § 2268, by separating motor vehicles from the operation of the gross earnings law and placing them under the exclusive operation of the motor vehicle law though they are used exclusively in the business which pays the gross earnings tax. The purpose was to have such companies pay the same rate of gross earnings tax without their motor vehicles as they theretofore paid including such vehicles.

Concededly, plaintiff's motor vehicles are necessarily used in its business. They are a substantial part of its physical assets and make a material contribution in the creation of the earnings from which the tax is determined. Indeed, it is the use of the property as a whole which creates the basic fund. The gross earnings tax is a lieu tax. It is a property tax. M. & St. L. R. Co. v. Koerner, 85 Minn. 149, 88 N. W. 430; State v. N. W. Tel. Exch. Co. 107 Minn. 390, 120 N. W. 534; State v. U. S. Exp. Co. 114 Minn. 346, 131 N. W.

489, 37 L.R.A.(N.S.) 1127; State v. Wells Fargo & Co. 146 Minn. 444, 179 N. W. 221. The amount thereof is measured by a certain per cent of all the earnings of the company. It is not an ad valorem tax. The amount is not to grossly exceed the amount of money which might be raised by an ad valorem tax. U. S. Exp. Co. v. Minnesota, 223 U. S. 335, 32 S. Ct. 211, 56 L. ed. 459. It is based upon the right to tax the property producing the earnings. It exists for convenience.

Our conception of the gross earnings tax is that it is aimed at the business to which it is applicable considered as a whole and embracing all property used therein. We think of this commuted tax as applicable to a going concern and as covering the whole thereof. That thought seems to run through our decisions. County of Ramsey v. C. M. & St. P. Ry. Co. 33 Minn. 537, 24 N. W. 313; County of Todd v. St. P. M. & M. Ry. Co. 38 Minn. 163, 36 N. W. 109; City of St. Paul v. St. P. M. & M. Ry. Co. 39 Minn. 112, 38 N. W. 925; State v. N. W. Tel. Exch. Co. 84 Minn. 459, 87 N. W. 1131; State v. Twin City Tel. Co. 104 Minn. 270, 116 N. W. 835; State v. N. W. Tel. Exch. Co. 107 Minn. 390, 120 N. W. 534; State v. Cudahy Packing Co. 129 Minn. 30, 151 N. W. 410; State v. Wells Fargo & Co. 146 Minn. 444, 179 N. W. 221. See also Hopkins v. Southern California Tel. Co. 275 U. S. 393, 48 S. Ct. 180, 72 L. ed. 329.

The gross earnings tax is inconsistent with any other form of taxation. Wright v. Georgia R. & B. Co. 216 U. S. 420, 30 S. Ct. 242, 54 L. ed. 544; Stearns v. Minnesota, 179 U. S. 223, 21 S. Ct. 73, 45 L. ed. 162; Hopkins v. Southern California Tel. Co. 275 U. S. 393, 48 S. Ct. 180, 72 L. ed. 329. Indeed, it seems to us that the unity of purpose is the foundation for the imposition of such commuted tax. Some of plaintiff's authorities rest upon a question of statutory or contract construction. The state claims this distinguishes such authorities and that they should not be controlling on the present question. But upon principle and reason we believe such tax always contemplated all property used in the particular business.

Plaintiff's motor vehicles are used exclusively in its business. If our conception of the gross earnings tax is the true one, such tax is necessarily a tax upon plaintiff's motor vehicles. If so, the imposition of the motor registration tax by virtue of the law of 1929 subjects them to two taxes. We so construe the law. The result is that the 1929 law is unconstitutional because art. 16 of the constitution provides that the motor registration tax shall be in lieu of all other tax except wheelage tax. It would also be in violation of art. 9, § 1, of our state constitution requiring taxes to be uniform.

The state argues that the constitution authorizes the imposition of a gross earnings tax "upon any or all property within this state" of such a company, and claims this authority for the imposition of such tax upon a portion of the property measured by a certain percentage of the income of the company from all sources. It also claims that there are no constitutional prohibitions against such procedure so long as the amount is reasonable. But this ignores the fact that the actual value of the business flows from the combined operation of all its parts, and its earnings are dependent upon each essential part thereof.

Our motor vehicle tax is both a property and a privilege tax. These elements are inseparable. The presence of the element of privilege tax which arises out of a great highway system beneficial to the owner of every motor vehicle using the same is worthy of consideration. Such motor vehicles stand in a class by themselves. But the law of 1929 does not provide that plaintiff be given credit on the gross earnings tax for the amount to be paid as a motor registration tax.

We are of the opinion that the 1929 law is in violation of our state constitution as hereinbefore mentioned and that it also violates the state and federal constitutions in that it denies the plaintiff the equal protection of the law, takes its property without due process of law, and is an arbitrary tax.

Reversed.