A. N. NELSON, County Treasurer, v. ST. PAUL TITLE INSURANCE & TRUST COMPANY.[1]

February 6, 1896.

Nos. 9758—(113).

**Taxation—Title Insurance Companies.**

If a title insurance company, organized under Laws 1887, c. 135 (see G. S. 1894, §§ 3338–3343), avails itself of the provisions of Laws 1889, c. 227, and engages in the annuity, safe-deposit, and trust business authorized by Laws 1883, c. 107 (see G. S. 1894, §§ 2841–2854), all its property is subject to assessment and taxation under the general tax law, in the same manner as the property of annuity, safe-deposit, and trust companies organized under the act of 1883.

Proceeding in the district court for Ramsey county to collect delinquent taxes upon personal property.   The decision of the court was that the personal property of defendant corporation was liable to taxation, as other personal property, and that plaintiff was entitled to judgment for $6,146.13, being the amount assessed by the county authorities after deducting the amount of taxes on real estate and bank stock.   On application of defendant, the case was certified by Brill, J., to the supreme court on the following points:

(1) Is said corporation, or its property, except its said bank stock and its said real estate, subject to taxation in any other manner than as provided in Laws 1887, c. 135?

(2) What portion, if any, of the property of said corporation is subject to taxation in any other manner than as expressly provided in Laws 1887, c. 135?

Affirmed.

[1] Reported in 66 N. W. 206.

*Pierce Butler*, for plaintiff.

*Stevens, O'Brien, Cole & Albrecht*, for defendant.

MITCHELL, J.    The defendant was originally a corporation existing and doing business under Laws 1887, c. 135, as amended, entitled "An act regulating and confirming the formation of real estate title insurance companies." See G. S. 1894, §§ 3338–3343. The authorized business of such corporations was that of "examining titles to real estate and of guarantying or insuring owners of real estate and others interested therein or having liens or incumbrances thereon against loss by reason of defective titles, incumbrances or otherwise." [2]    The act provided that such corporations "shall be taxed in like manner as domestic insurance companies are." [3]    The statute relating to domestic insurance companies provided that they shall annually "pay to the state two per cent. on their premium receipts in this state, and shall also pay taxes and assessments upon real estate owned by them within the state in like manner and in like amount as real estate owned by individuals is taxed and assessed, and no additional taxes shall be collected of such companies." G. S. 1894, § 3192.

Laws 1883, c. 107, and amendatory acts (see G. S. 1894, §§ 2841–2854), authorized the formation of corporations "for the purpose of transacting business as annuity, safe-deposit and trust companies." [4] The powers of such companies as enumerated in section 9 of the act [5] are quite varied and extensive, and the kinds of business which they are authorized to transact are very different from that to be transacted by title insurance companies organized under Laws 1887, c. 135.    The act of 1883 made no provision for any special mode of taxing annuity, safe-deposit, and trust companies, but left their property to be assessed and taxed in the usual and ordinary method in which the property of corporations is assessed and taxed under the general tax law.

In 1889 the legislature passed an act (Laws 1889, c. 227; G. S. 1894, § 3339) providing that any corporation organized under or confirmed by Laws 1887, c. 135, upon complying with the provisions of Laws 1883, c. 107, as amended, or as the same might be thereafter

2 G. S. 1894, § 3338.          4 See G. S. 1894, § 2841.

3 Id. § 3341.          5 G. S. 1894, § 2849.

amended, should be subject to the provisions of the last-named act, as amended, or as the same might thereafter be amended, and entitled to all the rights, privileges, and franchises thereby conferred.

After the passage of the act of 1889, the defendant complied with the provisions of the act of 1883, and amended its articles of association so as to authorize it to transact both a title insurance business and an annuity, safe-deposit, and trust business, and any other kind of business authorized by the act of 1883, and since that time it has been engaged in transacting both kinds of business. Its capital is invested partly in securities as a "guaranty fund," as required by Laws 1887, c. 135,—the title insurance company act,—partly in securities deposited with the state auditor, as required by Laws 1883, c. 107,—the annuity, safe-deposit, and trust company act, —partly in a "title insurance plant," partly in real estate, partly in bank stock, and the balance in personal property, chiefly mortgage securities.

The questions certified to this court are: First, is the property of the defendant, other than its real estate and bank stock, subject to taxation in any other manner than as provided by Laws 1887, c. 135, to wit, by payment of 2 per cent. on its premium receipts from title insurance? If so, then, second, what portion of its property is subject to such other mode of taxation?

Our answer to these questions is that all the property of the defendant is subject to assessment and taxation in the usual and ordinary manner in which the property of corporations is assessed and taxed under the general tax law.

Both parties concede the validity of the commuted system of taxing insurance companies provided by statute. Hence, we shall assume, without deciding, that this commuted system is not in conflict with any provision of the constitution. It is a familiar rule that exemptions from taxation are to be construed strictly in favor of the state. We think the same rule should be applied in the construction of statutes providing for a special or commuted plan of taxation which exempts or excepts property from the general system of taxation.

The exclusive business of domestic insurance companies is insurance. Their entire capital is used in, or invested for the purposes of, that business, and the chief source of their income is pre-

mium receipts on insurance policies issued by them. When the legislature provided for the same system of commuted taxation of title insurance companies, the exclusive business of such companies, as the law then was, was insuring against defective titles, and such business as was reasonably incident thereto. Their entire capital was used in, or invested for the purposes of, that business. The legislature must be presumed to have determined that, under such circumstances, 2 per cent. on premium receipts from insurance would be a fair equivalent for the amount of tax which the property of such companies would contribute if assessed in the usual manner.

But when the legislature subsequently authorized such companies also to transact other and entirely different kinds of business, in which they might use and invest the greater part of their capital, and from which the larger part of their profits might be derived, it is not to be presumed that they intended to accept 2 per cent. of the premium receipts from the insurance part of the business in lieu of all other taxes on the entire property of such companies. Any such scheme would be wholly repugnant to the provisions of the constitution requiring uniformity and equality of taxation.

Suppose, for example, there was another corporation organized under the act of 1887, with a capital equal to that of the defendant, but which is doing an exclusively title insurance business, while the defendant, having, under the act of 1889, availed itself of the provisions of the act of 1883, in doing both a title insurance and an annuity, safe-deposit, and trust business, but 90 per cent. of its business is of the latter kind, and 90 per cent. of its capital is used in that business. In such a case, the entire property of the other company would be assessed and taxed in the usual manner, under the general tax law, while, according to defendant's contention, all the tax it would have to pay (except on such of its capital as happens to be invested in real estate or bank stock) would be 2 per cent. on its receipts from the small fraction of its business which consisted of title insurance. The result might be that, while both the companies had an equal amount of capital, the defendant would pay only a few hundred dollars taxes, while the other company would have to pay as many thousands. Any such construction of the statute is not to be entertained for a moment.

The legislature provided that if a title insurance company, organized under the law of 1887, availed itself of the provisions of the act of 1889 so as to enable it to do "an annuity, safe-deposit, and trust" business under the act of 1883, it should be subject to all the provisions of the last-named act.    The defendant, having availed itself of the benefits, must accept the burdens imposed by the act. One of these burdens is that its property shall be assessed and taxed in the usual method, the same as that of any other annuity, safe-deposit, and trust company.    Whether it would be feasible to apply a dual system of taxation to companies which, like defendant, are doing both kinds of business, and segregate the "title insurance" business from the "annuity, safe-deposit, and trust" business, we are not sufficiently advised, and it is not a question for us to consider.    That is a question for the legislature.    This will not result in double taxation.    If the defendant, under an erroneous construction of the law, has paid to the state 2 per cent. of its premium receipts, it will be entitled to have it refunded, and it is to be presumed that the state will do its duty in that regard.

The decision of the trial court was correct, and the proceedings are remanded, for further action in accordance therewith.