## STATE v. TITLE INSURANCE COMPANY OF MINNESOTA.[1]

May 29, 1936.

No. 30,889.

[1]Reported in 267 N. W. 427.

*Frank J. Williams* and *Edward J. Shannon,* Assistant County Attorneys, for the State.

*Reuder & Carroll* and *Nichols, Mullin & Farnand,* for respondent.

JULIUS J. OLSON, JUSTICE.

The state appeals from an order denying its motion for new trial. The issue involved is whether defendant is under the law required to pay moneys and credits and general personal property taxes in addition to those imposed upon and paid by it as a title insurance company.

The facts are simple. As found by the court they may be summarized in this fashion: Defendant is a title insurance company organized and functioning under and pursuant to 1 Mason Minn. St. 1927, § 3315(a)(7). Counsel so stipulated, and the court so found. In order to function as such it owns and maintains a complete title plant. This consists of something over 83,000 attorneys' opinions on titles, abstract books, indexes to judgments, and many miscellaneous records, "all of which [so the court found] are necessary to its business of insuring titles."

Under 1 Mason Minn. St. 1927, § 3703, it is required to and does maintain a guaranty fund kept on deposit with the commissioner of insurance of this state in excess of $600,000. This fund is kept and so deposited to secure the holders of defendant's policies of title insurance. The cited section (3703) also provides, respecting investment of its capital:

"After the investment of such portion of its capital stock as hereinbefore provided, and the deposit of the securities in its guaranty fund as aforesaid, the remainder of its capital stock may be invested in such securities, records, abstract plants and equipment as. the

434

board of directors of such company shall determine to be suitable for the transaction of its business, and in addition to the powers now possessed, such companies are authorized to make abstracts of title to real property for compensation."

Conformably to the authority thus granted to defendant by statute and under its corporate articles, it has made, during the times here involved, abstracts of title to real estate. It is extensively engaged in that enterprise. In making such abstracts it charges compensation to anyone purchasing or hiring such service; also, in making such abstracts it has occasion to use and does use its abstract books and its many other records and facilities.

Defendant has duly and seasonably paid the gross premium tax provided by 1 Mason Minn. St. 1927, § 3347, as amended by L. 1929, c. 148 (3 Mason Minn. St. 1934 Supp. § 3347), ever since its organization, and has likewise paid all real estate taxes upon such property held and owned by it. There is no claim otherwise.

The issue presented does not involve the right of the state to impose a tax upon defendant's income from its abstract business under the income tax statute. That question is not here and must necessarily remain open. Our present concern is limited strictly to one issue: May the state impose and enforce a moneys and credits tax and a general personal property tax in addition to the gross premium tax as provided by said § 3347?

No such tax was ever attempted to be imposed until 1933, at which time the assessor of Minneapolis assessed defendant with moneys and credits, for the years 1929 to 1933, inclusive, amounting in all to a valuation of $1,536,000. The total tax so sought to be imposed for these five years amounted to $4,608. As a general personal property tax during the same interim the assessor levied ad valorem taxes amounting to $31,372.91. The amounts referred to do not include penalties, interest, or costs.

Defendant answered setting forth its corporate character; denied any liability for taxes of the kinds or types here sought to be imposed, its claim being that, having paid the gross premium tax provided by § 3347 as amended (3 Mason Minn. St. 1934 Supp.

§ 3347), it is not liable for the taxes here involved. That section, as far as material here, provides:

"Every domestic and foreign company * * * shall pay to the State Treasurer * * * annually, a sum equal to 2 per cent of the gross premiums * * * on all direct business received by it in this state, or by its agents for it, * * *.

*"In the case of every domestic company such sums shall be in lieu of all other taxes, except those upon real property, owned by it in this state, which shall be taxed the same as like property of individuals, and in the case of every foreign company such sum shall be in lieu of all other taxes, except those upon real and personal property owned by it in this state, which shall be taxed the same as like property of individuals."*

Upon the facts found, stated with more particularity by the court but, we think, fairly included in the foregoing summary, the court concluded that the taxes sought to be imposed were illegal and void and that the same, including interest, penalties and costs should be "abated, cancelled and annulled," and the city assessor of Minneapolis, the auditor and treasurer of Hennepin county were "directed to cancel and annul the same upon the books of their respective offices."

The state moved for a new trial, the motion was denied, and this appeal followed.

Counsel for the state cite and with confidence rely upon Nelson v. St. Paul Title Ins. & Tr. Co. 64 Minn. 101, 66 N. W. 206, 207. That case, so counsel contend, fits the facts here involved and as such should be conclusive of result. This, then, makes it necessary that we carefully consider the facts upon which that decision is founded.

Defendant in that case was originally incorporated under L. 1887, c. 135. Its authorized business under the cited statute was that of "examining titles to real estate and of guaranteeing or insuring owners of real estate and others interested therein or having liens or encumbrances thereon against loss by reason of defective titles, encumbrances or otherwise." The act provided that corporations of this type should "be taxed in like manner as domestic insurance

companies are." Domestic insurance companies under the then existing statute were required annually to [64 Minn. 102] "pay to the state two per cent on their premium receipts in this state," also taxes upon their real estate the same as individuals.

Under a prior act, L. 1883, c. 107, authority was granted for the formation of corporations "for the purpose of transacting business as annuity, safe-deposit and trust companies." The powers granted such companies were varied and extensive. The kinds of business which such companies were authorized to transact were [64 Minn. 102] "very different from that to be transacted by title insurance companies." Under that act no provision was made for any special method of taxing the properties of such companies. They were left to be assessed and taxed "in the usual and ordinary method in which the property of corporations" was generally assessed and taxed under the general law.

Later L. 1889, c. 227, was enacted. This provided that any corporation organized as a title insurance company (L. 1887, c. 135), upon complying with the requirements of the annuity, safe-deposit, and trust company act (L. 1883, c. 107) could also engage in the business permitted thereby. Defendant, by appropriate amendment to its articles, chose to come within that act and promptly proceeded to add to its activities the business of an annuity, safe-deposit, and trust company [64 Minn. 103], "and any other kind of business authorized by the act of 1883." After so amending its articles it invested its capital partly in securities as a guaranty fund as required under the title insurance company act, partly in securities deposited with the state auditor as required by the annuity, safe-deposit, and trust company act, and partly in a "title insurance plant." Its remaining capital was invested in real estate, bank stocks, and other personal property, largely mortgage securities.

The questions certified to and decided by this court in that case were stated thus. [64 Minn. 101]:

"(1) Is said corporation, or its property, except its said bank stock and its said real estate, subject to taxation in any other manner than as provided in Laws 1887, c. 135?

"(2) What portion, if any, of the property of said corporation is subject to taxation in any other manner than as expressly provided in Laws 1887, c. 135?"

There, as here, the parties conceded the validity of the commuted system of taxation of insurance companies as provided by that statute. The court in disposing of the issues presented said (64 Minn. 103, 104, 105):

"It is a familiar rule that exemptions from taxation are to be construed strictly in favor of the state. We think the same rule should be applied in the construction of statutes providing for a special or commuted plan of taxation which exempts or excepts property from the general system of taxation.

"The exclusive business of domestic insurance companies is insurance. Their entire capital is used in, or invested for the purposes of, that business, and the chief source of their income is premium receipts on insurance policies issued by them. When the legislature provided for the same system of commuted taxation of title insurance companies, the exclusive business of such companies, as the law then was, was insuring against defective titles, and such business as was reasonably incident thereto. Their entire capital was used in, or invested for the purposes of, that business. The legislature must be presumed to have determined that, under such circumstances, 2 per cent. on premium receipts from insurance would be a fair equivalent for the amount of tax which the property of such companies would contribute if assessed in the usual manner.

"But *when the legislature subsequently authorized such companies also to transact other and entirely different kinds of business,* in which they might use and invest the greater part of their capital, and from which the larger part of their profits might be derived, it is not to be presumed that they intended to accept 2 per cent. of the premium receipts from the insurance part of the business in lieu of all other taxes on the entire property of such companies. Any such scheme would be wholly repugnant to the provisions of the constitution requiring uniformity and equality of taxation. * * *

"The legislature provided *that if a title insurance company, organized under the law of 1887, availed itself of the provisions of*

*the act of 1889 so as to enable it to do 'an annuity, safe-deposit, and trust' business under the act of 1883, it should be subject to all the provisions of the last-named act. The defendant, having availed itself of the benefits, must accept the burdens imposed by the act. One of these burdens is that its property shall be assessed and taxed in the usual method, the same as that of any other annuity, safe-deposit, and trust company.* Whether it would be feasible to apply a dual system of taxation to companies which, like defendant, are doing both kinds of business, and segregate the 'title insurance' business from the 'annuity, safe-deposit, and trust' business, we are not sufficiently advised, and it is not a question for us to consider. That is a question for the legislature." (Italics ours.)

In County of Todd v. St. P. M. & M. Ry. Co. 38 Minn. 163, 36 N. W. 109, this court held that gross earnings taxes paid by defendant did not absolve it from taxes levied upon large tracts of timber lands acquired and used for the purpose of converting the timber into ties and lumber for its corporate purposes. The same result was reached in County of Hennepin v. St. P. M. & M. Ry. Co. 42 Minn. 238, 240, 241, 44 N. W. 63, 64, where defendant sought to escape taxation upon its hotel located on the shores of Lake Minnetonka. Defendant's claim was denied because:

"The hotel was constructed and is owned by the railroad company. It is rented by the company and used by the lessees for general hotel purposes, and as a place of summer resort. The only connection or relation between the hotel business and the proper business of the railroad company, as a carrier of passengers and freight, is that it contributes largely to increase the volume of travel over the railroad; nearly all of the visitors and guests at the hotel taking passage to and from that place over this line of road. That fact, which is relied upon in support of the claim that the hotel is reasonably and properly a part of the railroad business, necessary to its maintenance, does not justify that claim. The hotel business is in its nature wholly distinct from that for which the railroad corporation was created. It bears no other relation to railroad operations than does any enterprise which may promote

travel or bring goods into the channels of commerce. But the railroad company cannot employ its capital in every such collateral and distinct enterprise as may thus promote its business as a common carrier, and claim, as attaching to such investments, the peculiar exemption from the ordinary burden of taxation which may be accorded to its property which is devoted to the proper business of a common carrier. * * * Whether a hotel, kept by a railroad company for the reasonably necessary and proper accommodation of its passengers as such, would be exempt, we do not decide, for this is not such a case."

That there are many and controlling distinctions between the position of the present defendant and that occupied by defendants in the cases we have discussed seems clear. So the issue necessarily narrows down to this: Is the business of making abstracts of title for pecuniary gain so foreign to the business of insuring real estate titles as to bring the present defendant within the class of unsuccessful defendants referred to in the mentioned cases?

First to be considered is the method of taxation upon a gross earnings basis as a substitution for one *ad valorem*. Gross earnings taxes are and have been in use over a long period of time in this state. Wherever this form has been put to use it has been recognized as a tax "in lieu" of other forms of taxation. There are many such cases to which reference might be made. A few of these, illustrative of the theory and basis upon which such tax is justified, may be of aid to decision here. Our cases as far back as Stinson v. Smith, 8 Minn. 326 (366), sustain the validity of this system, even to the extent of holding that payment of gross earnings taxes exempted the owner from taxes sought to be imposed for local improvements. See City of St. Paul v. St. P. & S. C. R. Co. 23 Minn. 469. That rule seems to have been followed in our later cases. See Patterson v. C. R. I. & P. Ry. Co. 99 Minn. 454, 109 N. W. 993, where prior cases are cited. And that exemption continued until our constitution was amended in 1920 by adoption of the amendment authorized by L. 1919, c. 533. Of our later cases upholding such commuted method of taxation the following are illustrative: American Ry. Exp. Co. v. Holm, 169 Minn. 323, 211

N. W. 467; *Id.* 173 Minn. 72, 216 N. W. 542; Railway Exp. Agency, Inc. v. Holm, 180 Minn. 268, 230 N. W. 815; State v. Pequot Rural Tel. Co. 188 Minn. 520, 247 N. W. 695.

Referring to 3 Mason Minn. St. 1934 Supp. § 3347, it seems clear that the legislative intent was to remove from general taxation all property of domestic insurance companies employed in its business "except those upon real property." That section as to domestic companies specifically so states. There is no ambiguity in the chosen language, hence no room for construction. As to "every foreign company," so the act provides, the exemption is not to apply to its real property or "personal property owned by it in this state." We think there can be no doubt, in view of this express provision, that the legislative intent was to eliminate from taxation *ad valorem* the personal property of such domestic insurance companies when invested in conformity with statutory requirements, and that the gross earnings tax upon insurance income alone was to take its place. The fact that the legislature exempted the personal property of a domestic company but specifically included such property as to a foreign company indicates a clear intention that the commuted system of taxation as to the former was the only tax sought against it. Otherwise why this distinction?

Under specific statutory grant this defendant has chosen to come within the provision which permitted it, as a title insurer, to make abstracts for compensation. Several legislative sessions have been held since that time. No effort has been made to change the theory or the basis upon which taxes against such corporations should be imposed. Clearly, if a different system is to be employed, the remedy lies with the legislature, not with us.

, The trial court found, and this the evidence sustains, that the abstract and title plant is an essential part of defendant's insurance business. Its capital has been used to acquire, improve, and maintain it. That being so, there can be no doubt of the correctness of the result reached below.

Order affirmed.

DEVANEY, CHIEF JUSTICE, took no part in the consideration or decision of this case.